LUCAS v AWAAD

MEIER v AWAAD

Docket Nos. 292785, 292786, and 295973. Submitted May 3, 2012, at
    Detroit. Decided January 29, 2013, at 9:20 a.m.

In Docket No. 292785, Amber Lucas brought an action in the Wayne
    Circuit Court against Yasser Awaad, M.D., Awaad's former em-
    ployer, Oakwood Healthcare, Inc., and related business entities
    (collectively, the Oakwood defendants), alleging that Awaad had
    falsely diagnosed her children with epilepsy/seizure disorder for
    the purpose of inflating his billings. Lucas sought damages based
    on various tort theories. Defendants moved for summary disposi-
    tion of Lucas's claim for intentional infliction of emotional distress
    under MCR 2.116(C)(8). The court, Daphne Means Curtis, J.,
    denied the motion. In a second amended complaint, Lucas added
    allegations of fraud, silent fraud, failure to disclose the truth, and
    conspiracy. The court also denied defendants' motion for summary
    disposition of these claims. Defendants appealed.

In Docket No. 292786, Stephen and Julie Meier and other parents of
    minors whom Awaad had diagnosed with epilepsy/seizure disorder
    brought an action in the Wayne Circuit Court, alleging, among other
    things, that Awaad and the Oakwood defendants violated the Michi-
    gan Consumer Protection Act (MCPA), MCL 445.901 *et seq.*, by
    engaging in false, misleading, and deceptive acts or omissions that did
    not involve medical judgment; providing an unconscionable incentive
    for Awaad to generate improper billings; and engaging in improper
    coding and billing practices. Plaintiffs further alleged that defendant
    Oakwood Professional Billing processed the fraudulent billings with
    knowledge that there was a revenue-sharing agreement between
    Awaad and the Oakwood defendants and with knowledge of his
    improper billing practices. Defendants moved for summary disposi-
    tion under MCR 2.116(C)(8), and the court, Daphne Means Curtis, J.,
    denied the motion. Defendants appealed.

In Docket No. 295973, Benjamin Meier and other minor plaintiffs,
    through their next friends, brought a medical malpractice action
    in the Wayne Circuit Court against Awaad and the Oakwood
    defendants, alleging that Awaad's false diagnoses of
    epilepsy/seizure disorder had subjected them to inappropriate

medication, treatment, and medical testing. Defendants filed a motion for summary disposition under MCR 2.116(C)(8), which the court, Daphne Means Curtis, J., denied. Plaintiffs moved for a default and to strike defendants' affidavits of meritorious defense on the ground that they failed to address Awaad's alleged failure to properly and accurately read the results of specific tests that could have ruled out the condition of epilepsy. Defendants moved to strike plaintiffs' affidavits of merit and notices of intent, arguing that they failed to state the applicable standard of care or the manner in which the standard was breached as required by MCL 600.2912d. The court denied defendants' motion and granted plaintiffs' motion in part, agreeing that the affidavits of meritorious defense did not satisfy the requirements of MCL 600.2912e and giving defendants 14 days to file amended affidavits. After concluding that defendants had failed to make a good-faith effort to comply with MCL 600.2912e in filing the amended affidavits, the court entered a default against defendants with regard to whether the applicable standard of care required Awaad to correctly read and interpret the EEGs and whether he had in fact done so. The court also struck Awaad's affidavit because it was not an amendment to previously filed affidavits. Defendants appealed.

The Court of Appeals consolidated the three cases for appeal.

The Court of Appeals *held*:

1. The trial court erred by denying defendant's motion for summary disposition with respect to Lucas's claim for intentional infliction of emotional distress because it actually sounded in medical malpractice, regardless of how it was labeled. The alleged actions occurred during the course of a professional relationship between Awaad and Lucas, given that Lucas's consent to medical procedures on behalf of her children was required, and the claim raised questions of medical judgment beyond the realm of common knowledge and experience given that, in order to prevail, Lucas would have had to establish that her children did not have epilepsy or seizure disorder.

2. The trial court erred by denying defendants' motion for summary disposition with respect to Lucas's claim of fraud because that claim raised questions of medical judgment beyond the realm of common knowledge and experience and therefore sounded in medical malpractice. The court also erred by denying summary disposition of the silent-fraud claim, which required a showing that defendants suppressed the truth with the intent to defraud plaintiff and that defendants had a legal or equitable duty of disclosure. Defendants had no duty to inform Lucas of Awaad's alleged history of fraudulently diagnosing seizure disorders. Fur-

ther, a duty to refrain from communicating false diagnoses was not equivalent to a duty to disclose, and defendants' duty to report Awaad's conduct to appropriate government agencies under federal law was not a duty to disclose to Lucas.

3. The trial court erred by denying defendants' motion for summary disposition with respect to plaintiffs' MCPA claim. The MCPA prohibits unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce. However, MCL 445.904(1)(a) provides that the MCPA does not apply to a transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under state or federal statutory authority. In determining whether this exception applied, the relevant inquiry was whether the general transaction was specifically authorized by law, not whether the specific misconduct alleged was prohibited. Because the practice of medicine is specifically authorized and regulated by law, plaintiffs' MCPA claim was barred by MCL 445.904(1)(a).

4. The trial court erred by concluding that defendants' affidavits of meritorious defense failed to satisfy MCL 600.2912e and by entering a default against defendants on that ground. While the affidavits did not state that Awaad had correctly read and interpreted the relevant tests, the affidavits clearly identified defendants' defense against this claim, which was that epilepsy diagnoses are not based solely on the tests plaintiffs identified, and there was no further factual basis that would have helped develop this theory. However, the trial court correctly struck Awaad's affidavit of meritorious defense as untimely because it was an entirely new affidavit rather than amendment of a previously submitted affidavit and it did not relate back to the timely filed affidavits of meritorious defense.

Affirmed in part and reversed in part; case remanded for further proceedings.

1. ACTIONS — TORTS — INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS — MEDICAL MALPRACTICE.

A claim sounds in medical malpractice, regardless of how it is labeled, if it pertains to an action that occurred within the course of a professional relationship and raises questions of medical judgment beyond the realm of common knowledge and experience.

2. ACTIONS — TORTS — SILENT FRAUD — DUTY TO DISCLOSE — FALSE MEDICAL DIAGNOSES.

A claim of silent fraud requires a showing that the defendant suppressed the truth with the intent to defraud the plaintiff and

that the defendant had a legal or equitable duty of disclosure; a healthcare provider has no duty to inform a patient of a doctor's success rates, including a history of falsely diagnosing other patients; a duty to refrain from communicating false diagnoses is not equivalent to a duty to disclose for purposes of a silent-fraud claim; the duty to report a doctor's misconduct to government agencies under federal law does not run to patients.

3. STATUTES — CONSUMER PROTECTION ACT — TRANSACTIONS OR CONDUCT AUTHORIZED BY LAW — MEDICAL SERVICES — CODING AND BILLING PRACTICES.

The Consumer Protection Act, MCL 445.901 *et seq.*, prohibits unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce; MCL 445.904(1)(a) provides that the Consumer Protection Act does not apply to a transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under state or federal statutory authority; in determining whether this exception applies, the relevant inquiry is whether the general transaction was specifically authorized by law, not whether the specific misconduct alleged was prohibited; the practice of medicine is specifically authorized and regulated by law.

*Secrest Wardle* (by *Bruce A. Truex* and *Janet Callahan Barnes*) for the plaintiffs in Docket Nos. 292785 and 292786.

*Secrest Wardle* (by *Bruce A. Truex* and *Drew W. Broaddus*) for the plaintiffs in Docket No. 295973.

*Kitch Drutchas Wagner Valitutti & Sherbrook* (by *Christina A. Ginter* and *Charles W. Fisher*) for defendants in Docket Nos. 292785, 292786, and 295973.

Before: K. F. KELLY, P.J., and WILDER and BOONSTRA, JJ.

WILDER, J. In these consolidated appeals, defendant Dr. Yasser Awaad and his professional corporation, Yasser Awaad, M.D., P.C., and defendants Oakwood Healthcare, Inc., Great Lakes Pediatric Neurology, P.C.,

Oakwood Professional Billing, L.L.C., and Oakwood United Hospitals, Inc.,[1] appeal by leave granted orders entered in three related lawsuits. All three lawsuits arise from allegations that Awaad intentionally misdiagnosed his pediatric neurological patients with epilepsy/seizure disorder for the purpose of increasing his billings. We affirm in part, reverse in part, and remand.

## I. BACKGROUND

Awaad is a board-certified pediatric neurologist who was formerly employed by the Oakwood defendants. All three of these appeals arise from allegations that Awaad falsely diagnosed several of his pediatric patients, including the minor plaintiffs in Docket No. 295973 and the children of the plaintiffs in Docket Nos. 292785 and 292786, with epilepsy/seizure disorder. All plaintiffs aver that Awaad intentionally made false diagnoses in order to increase his billings pursuant to the Oakwood defendants' compensation system. Plaintiffs maintain that the Oakwood defendants are vicariously liable for Awaad's misfeasance.

### A. DOCKET NO. 292785

In Docket No. 292785, the plaintiff is Amber Lucas, who is the parent of children allegedly misdiagnosed by Awaad. Lucas filed suit, seeking damages personal to herself based on various tort theories, including intentional infliction of emotional distress and fraud. The trial court granted Lucas leave to file a second amended complaint. Although Lucas subsequently moved to file

---

[1] Oakwood United Hospitals, Inc., is only a party in Docket Nos. 292786 and 295973. For simplicity's sake, the defendants, not including Awaad and his professional corporation, will be referred to as the "Oakwood defendants."

additional amended complaints, none of those motions had been decided at the time the orders on appeal were issued. Thus, only the second amended complaint is relevant on appeal.

Lucas's second amended complaint included claims of intentional infliction of emotional distress against all the defendants, allegedly caused by extreme and outrageous conduct by Awaad in "falsely diagnosing the condition of epilepsy/seizure disorder in [her children] who did not suffer the condition [and] communicating that know[n] false diagnosis" for the purpose of inflating billings.

Defendants moved for partial summary disposition of this claim under MCR 2.116(C)(8) and argued that Lucas did not have a legally cognizable claim for intentional infliction of emotional distress arising from Awaad's misdiagnosis of her children. Defendants argued that Lucas could not recover for emotional distress caused by defendants' treatment of her children because she was not a "bystander" to the alleged harm, which defendants contend was a required element for recovery. Defendants also argued that Lucas's claim sounded in medical malpractice and that there was no valid cause of action for a parent's emotional distress arising from medical malpractice involving a child patient.

Lucas argued in response that her complaint alleged the required elements for intentional infliction of emotional distress. Plaintiff denied that the bystander requirement applied to her claim and also refuted defendants' contention that her claim was subject to the procedural requirements of a medical malpractice action. Lucas emphasized that her claim was not based on Awaad's malpractice against her children, but, rather, was based on his intentionally fraudulent communications to her.

The trial court denied defendants' motion for summary disposition. The trial court first determined that Lucas was not obligated to meet the bystander requirements because her claim was based on Awaad's alleged communication of a false diagnosis *directly to her*. The trial court also rejected defendants' argument that Lucas's claim sounded in medical malpractice, reasoning that Lucas's claim was not premised on a duty of care owed to the children as their physician.

In her second amended complaint, Lucas also asserted in count III that the defendants were liable for "Silent Fraud and Failure to Disclose the Truth," and count VIII alleged that defendants were liable for "Fraud and Silent Fraud and Conspiracy."

Defendants moved for summary disposition of all the fraud and conspiracy claims. Defendants argued that Lucas's allegations of fraud were not stated with particularity as required by MCR 2.112(B)(1). Defendants also maintained that Lucas failed to allege when her children were wrongly diagnosed, when they received treatment, and what treatments each child received. With respect to the Oakwood defendants, defendants argued that Lucas made only vague and general allegations that the Oakwood defendants failed to take proper action in response to unidentified investigations and audits. Defendants also argued that allegations of false diagnoses sounded solely in medical malpractice and could not support an independent claim for fraud.

Lucas argued in response that her allegations were sufficient to state a claim for fraud and that defendants could learn the details of her case, including the dates of diagnoses and treatment, through discovery. Lucas denied that her claims for fraud and conspiracy sounded in medical malpractice because her claims were based

on defendants' alleged breaches of duties owed to her, with whom they had no professional relationship. Lucas also argued that defendants owed her a duty not to misrepresent diagnoses and treatment recommendations for her children. Lucas cited medical ethics codes requiring physicians to deal honestly and openly with patients. Finally, Lucas contended that a physician owes a minor patient's parent the same fiduciary duty of honesty that a physician owes to an adult patient because the parent makes decisions on behalf of the child.

The trial court concluded that Lucas's claim did not sound in medical malpractice because Lucas alleged false communication by defendants, not incorrect diagnoses. The trial court also ruled that Lucas had pleaded sufficient facts to establish a claim for fraud based on defendants' alleged false information made for the purpose of increasing billings. In accordance with these findings, the trial court denied defendants' motion for partial summary disposition with respect to fraud, silent fraud, and conspiracy.

### B. DOCKET NO. 292786

In Docket No. 292786, the plaintiffs are parents of minors who were patients of Awaad.[2] The plaintiffs filed their complaint on September 12, 2008, and asserted several of the same claims raised by Lucas in Docket No. 292785, including fraud, silent fraud, conspiracy, and intentional infliction of emotional distress. The only claim at issue in Docket No. 292786, however, is

---

[2] We note that the name of one of the plaintiffs, "Btheag Jaber," appears to have been misspelled in the lower court filings. The caption of this case retains that spelling for the sake of consistency. We further note that "Laura Abel-Slater" also appears as "Laura Abdel-Slater" in some lower court filings.

count IX,[3] which alleged that Awaad and the Oakwood defendants violated the Michigan Consumer Protection Act (MCPA), MCL 445.901 *et seq.*

The plaintiffs alleged that defendants violated the MCPA by engaging in "false, misleading and deceptive acts and/or omissions" that did not involve medical judgment; that the Oakwood defendants' employment agreements with Awaad "provided an unconscionable incentive for Yasser Awaad to generate improper billings and removed his medical judgment"; and that Awaad "engaged in improper coding and billing practices, which included false, misleading and deceptive acts and/or omissions" that did not involve medical judgment. Plaintiffs further alleged that defendant Oakwood Professional Billing processed the fraudulent billings with knowledge of the revenue-sharing agreement between Awaad and the Oakwood defendants and with knowledge of his improper billing practices.

Defendants moved for summary disposition pursuant to MCR 2.116(C)(8), arguing that plaintiffs failed to state a claim under the MCPA because the allegations did not involve "trade or commerce" as that term is used in MCL 445.903(1). Defendants also contended that plaintiffs' claims were based on transactions that fall under the exception to the MCPA found in MCL 445.904(1)(a), which provides that the MCPA does not apply to conduct "specifically authorized" by state or federal laws that are administered by a regulatory board.

In response, plaintiffs argued that the MCPA should be liberally construed to fulfill its goal of protecting consumers, including patients who are harmed by the commercial and business aspects of the practice of

---

[3] Although the various plaintiffs brought many of the same claims, defendants opted to selectively target claims in each action.

medicine. Plaintiffs denied that their claims were based on conduct involving medical judgment and, instead, characterized their claims as based on defendants' "purposeful conduct to steal from Plaintiffs, which is based solely on Defendants' entrepreneurial, commercial, and business aspect of the practice of medicine." With respect to the exception in MCL 445.904(1)(a), plaintiffs argued that it was an affirmative defense and that they were not required to plead facts in avoidance of the defense in order to state a valid claim for relief.

The trial court denied defendants' motion for summary disposition, mainly on the basis that plaintiff's allegations related to the "entrepreneurial, commercial and/or business aspect of the practice of medicine."

### C. DOCKET NO. 295973

In Docket No. 295973, the minor plaintiffs, through their next friends, sued defendants for medical malpractice. Plaintiffs alleged that they were injured by Awaad's false diagnoses of epilepsy/seizure disorder, which subjected the minor plaintiffs to inappropriate medication, treatment, and medical testing. The only pertinent claims on appeal are the medical malpractice claims found in count VII against the Awaad defendants and in count VIII against the Oakwood defendants.

Pursuant to MCL 600.2912d, the minor plaintiffs supported their medical malpractice claims with affidavits of merit executed by Dr. Michael Kohrman, a board-certified specialist in child neurology. In accordance with MCL 600.2912e, defendants filed affidavits of meritorious defense executed by Dr. Michael Duchowny and Dr. Michael Johnston.

Defendants moved for summary disposition of plaintiffs' malpractice claims under MCR 2.116(C)(8). Defendants argued that plaintiffs' "boilerplate" allegations of

malpractice were not sufficiently specific to establish valid claims against defendants. Defendants contended that plaintiffs could not establish malpractice merely by alleging that Awaad had incorrectly diagnosed patients with epilepsy without alleging that he had breached a standard of practice. Defendants acknowledged at the summary disposition hearing that their motion was based, in part, on the alleged inadequacy of plaintiffs' affidavits of merit.

The trial court concluded that plaintiffs' complaint and the affidavits of merit contained sufficient allegations of malpractice to withstand a motion for summary disposition under MCR 2.116(C)(8).

Plaintiffs then moved to strike defendants' affidavits of meritorious defense because they allegedly failed to address statements in plaintiffs' affidavits of merit that defendants had failed to properly and accurately read the results of EEGs, MRIs, PETs, and other tests to rule out the condition of epilepsy. Plaintiffs also argued that, as a result of the inadequate affidavits of meritorious defense, the trial court should enter a default against defendants.

Defendants argued in response that the affidavits satisfied all the requirements of MCL 600.2912e because they set forth the applicable standard of practice for a pediatric neurologist, which was to diagnose epilepsy/seizure disorder on the basis of clinical history and examination and evaluation of the patient. Defendants asserted that plaintiffs' challenge to the affidavits of meritorious defense was based only on "the fundamental disagreement between the parties regarding the medical issues underlying the claim of liability that lies at the very heart of this case."

Defendants then moved to strike plaintiffs' affidavits of merit and notices of intent. Defendants argued that

plaintiffs' affidavits of merit failed to state the applicable standard of care or the manner in which the standard was breached, as required by MCL 600.2912d. Defendants contended that the bare assertion that "testing" had been "improperly" interpreted failed to explain the manner in which the standard of practice had been breached. Plaintiffs argued in response that the trial court had already ruled on the sufficiency of plaintiffs' affidavits of merit when it denied defendants' motion for summary disposition.

The trial court concluded that the affidavits of meritorious defense did not satisfy the requirements of MCL 600.2912e because the affidavits did not address whether Awaad correctly read and interpreted the EEG test results. However, instead of entering a default against defendants as plaintiffs requested, the trial court gave defendants 14 days to file amended affidavits. And the trial court denied defendants' motion to strike plaintiffs' affidavits of merit and notices of intent, stating that it had already addressed those same arguments when it ruled on defendants' motion for summary disposition.

On July 7, 2009, defendants filed amended affidavits of meritorious defense. Duchowny prepared an affidavit for each child, and Johnston prepared an affidavit for Benjamin Meier. Duchowny summarized each child's signs and symptoms, the course of treatment recommended by Awaad, and the child's progress as observed at each office visit. Although each affidavit of meritorious defense contained information specific to each child, they all provided the same information regarding the standard of care for Awaad and the other defendants, especially with respect to the use of EEGs as a diagnostic tool to confirm or rule out a diagnosis of epilepsy/seizure disorder. At this time, defendants also

submitted an affidavit of meritorious defense executed by Awaad. Unlike Duchowny's and Johnston's affidavits, Awaad's affidavit stated that he correctly read the EEG results.

Plaintiffs filed a renewed motion to strike defendants' amended affidavits of meritorious defense. Plaintiffs argued that the amended affidavits failed to correct the deficiencies in the original affidavits because they did not indicate whether the standard of practice required Awaad to correctly read and interpret the EEGs. Plaintiffs maintained that a second deficiency was that the affidavits failed to state that Awaad correctly read and interpreted the EEGs. Plaintiffs also argued that Awaad's affidavit should be rejected because it was not an amended affidavit and had not been filed with leave of the court.

Defendants argued that the affidavits of meritorious defense were sufficient because they stated that Awaad complied with the applicable standard of care. Defendants further argued that if their affidavits were not compliant, default would be an unjustly harsh sanction.

With respect to the substance of the affidavits, the trial court first determined that "defendants' affidavits fail to identify a valid defense to plaintiffs' claims regarding the correct reading and interpretation of the EEGs." The trial court also ruled that the affidavits failed to provide a defense to plaintiffs' claims "that the standard of care required Dr. Awaad to correctly read and interpret the EEGs, and that Dr. Awaad breached that standard of care when he failed to correctly read and interpret the EEGs." Finally, the trial court concluded that "the affidavits of meritorious defense are substantively void of the statutorily required content under MCL 600.2912e as to these issues."

The trial court also found that default was warranted "because defendants have failed to make a good-faith effort to comply with the requirements of MCL 600.2912e," explaining:

This Court specifically found at the June 23, 2009 hearing on plaintiffs' first motion to strike defendants' affidavits that the affidavits were defective because they did not address whether the standard of care required Dr. Awaad to correctly read and interpreted [sic] the EEGs and whether Dr. Awaad did, in fact, correctly read and interpret the EEGs. Despite plaintiffs' request for a default, this Court allowed defendants 14 days to file affidavits addressing the issue of the EEGs. However, as explained above, defendants' affidavits remain deficient. Given that this Court explicitly explained how defendants' affidavits were defective and gave defendants 14 days in which to file amended affidavits addressing Dr. Awaad's reading of the EEGs, the Court finds that defendants did not make a good-faith attempt to file affidavits which were responsive to plaintiffs' claims.

The trial court therefore entered a default against defendants with respect to whether the standard of care required Awaad to correctly read and interpret the EEGs and whether he had, in fact, correctly read and interpreted the EEGs. The trial court also struck Awaad's affidavit because it was not an amendment of previously filed affidavits.

## II. ANALYSIS

### A. DOCKET NO. 292785

Defendants argue that the trial court erred when it denied their motion for summary disposition with regard to Lucas's allegations of intentional infliction of emotional distress, fraud, and conspiracy. This Court reviews a trial court's decision on a motion for sum-

mary disposition de novo. *Henry v Dow Chem Co*, 473 Mich 63, 71; 701 NW2d 684 (2005). A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of a claim on the basis of the pleadings alone. *Smith v Stolberg*, 231 Mich App 256, 258; 586 NW2d 103 (1998). A court must "determine whether the claim is so clearly unenforceable as a matter of law that no factual development could establish the claim and justify recovery." *Id.* In doing so, a reviewing court accepts the factual allegations in the complaint as true and construes them in a light most favorable to the nonmoving party. *Kuznar v Raksha Corp*, 481 Mich 169, 176; 750 NW2d 121 (2008).

### 1. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

The trial court erred when it denied defendants' motion for summary disposition with respect to Lucas's claim for intention infliction of emotional distress.

" 'To establish a prima facie claim of intentional infliction of emotional distress, the plaintiff must present evidence of (1) the defendant's extreme and outrageous conduct, (2) the defendant's intent or recklessness, (3) causation, and (4) the severe emotional distress of the plaintiff.' " *Dalley v Dykema Gossett PLLC*, 287 Mich App 296, 321; 788 NW2d 679 (2010) (citation omitted). "Liability for the intentional infliction of emotional distress has been found only where the conduct complained of has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Doe v Mills*, 212 Mich App 73, 91; 536 NW2d 824 (1995). Accordingly, "[l]iability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id.*

Defendants do not directly address whether the complaint alleges each of the necessary elements for a claim for intentional infliction of emotional distress. Instead, they contend that Lucas's claim sounds in medical malpractice rather than being an independent claim of intentional infliction of emotional distress.

Defendants correctly assert that Lucas's labeling of her claim as intentional infliction of emotional distress is not dispositive of whether her claim sounds in medical malpractice. In determining the nature of a claim, "[i]t is well established that '[t]he gravamen of an action is determined by reading the claim as a whole' and looking 'beyond the procedural labels to determine the exact nature of the claim.' " *Tipton v William Beaumont Hosp*, 266 Mich App 27, 33; 697 NW2d 552 (2005) (citations omitted). Our Supreme Court in *Bryant v Oakpointe Villa Nursing Ctr, Inc*, 471 Mich 411; 684 NW2d 864 (2004), set forth a two-part test to determine whether an alleged claim is a medical malpractice claim, regardless of the labels the plaintiff uses. The two questions a court must answer are

> (1) whether the claim pertains to an action that occurred within the course of a professional relationship; and (2) whether the claim raises questions of medical judgment beyond the realm of common knowledge and experience. If both these questions are answered in the affirmative, the action is subject to the procedural and substantive requirements that govern medical malpractice actions. [*Id*. at 422.]

We answer the first question in the affirmative because there can be no dispute that the alleged actions occurred within the course of a professional relationship. While Awaad was not providing healthcare to Lucas, Lucas was acting on behalf of her children, the patients, in the patient-physician relationship because,

as their mother, she was responsible for providing the necessary medical consent on behalf of her children. See *In re Rosebush*, 195 Mich App 675, 683; 491 NW2d 633 (1992) ("It is well established that parents speak for their minor children in matters of medical treatment."). Like consent given by any patient for any medical procedure, Lucas's consent on behalf of her children was to have been "informed consent." "The doctrine of informed consent requires a physician to warn a patient of the risks and consequences of a medical procedure." *Wlosinski v Cohn*, 269 Mich App 303, 308; 713 NW2d 16 (2005). As a result, a doctor must engage in a substantive discussion with the parent of a minor patient in order to share these risks and consequences and to obtain the parent's consent for the proposed medical procedure. Thus, the parent stands in the place of the child in the patient-physician relationship. Further, under the Public Health Code, MCL 333.1101 *et seq.*, a parent represents a child patient in other instances as well. For example, a medical provider must maintain a minor patient's medical records for at least seven years unless the medical provider obtains the parent's authorization for early destruction. MCL 333.16213(1); MCL 333.16213(7)(c) (defining "patient" to include a parent of a minor who received medical treatment). Therefore, because Lucas stood in the place of her minor children with respect to providing consent in a relationship between a patient and a healthcare provider, we hold that the relationship between her and Awaad was indeed a "professional relationship."

We also answer the second question in the affirmative because Lucas's claim raises questions of medical judgment beyond the realm of common knowledge and experience. Because defendants moved for summary disposition under MCR 2.116(C)(8), the pertinent inquiry is whether Lucas's complaint alone is sufficient to

state a claim and justify recovery. *Smith*, 231 Mich App at 258. The crux of Lucas's claim of intentional infliction of emotional distress is that Awaad intentionally and knowingly communicated a false diagnosis to Lucas for the purpose of financial gain. In other words, Lucas alleges that Awaad improperly diagnosed Lucas's children with epilepsy/seizure disorder when he knew that in fact they did not have the disorder. Thus, in order to prevail, Lucas would necessarily have to establish that her children did *not* suffer from epilepsy/seizure disorder. Establishing this fact would, in turn, necessarily require expert testimony involving issues of medical judgment beyond the realm of common knowledge and experience.

*Tipton*, 266 Mich App 27, is analogous to the present case. In *Tipton*, the plaintiff sued the defendant hospital and the defendant doctor under the MCPA. The plaintiff alleged that the defendants both failed to inform the plaintiff that the defendant doctor had been involved in five prior birth trauma medical malpractice lawsuits, even though none of them had resulted in a verdict or settlement against the doctor. *Id.* at 28. The Court held that summary disposition was proper for the defendants because the plaintiff's complaint sounded in medical malpractice. *Id.* at 37. Importantly, the Court determined that the crux of plaintiff's complaint was that the doctor "was unreliable and unable to render safe prenatal and delivery care simply because he was involved in prior birth trauma medical malpractice lawsuits." *Id.* at 35. But because a doctor's involvement in prior medical malpractice lawsuits does not render him "unreliable per se or unable to prove safe medical care," the plaintiff would be required to show that the doctor was indeed unreliable or unable to provide safe medical care. *Id.* at 36. The Court determined that this would necessarily require expert testimony involving

medical judgment, which placed it in the realm of medical malpractice. *Id.* In this case, because the crux of Lucas's claim for intentional infliction of emotional distress is that Awaad knowingly provided *false* diagnoses, expert testimony concerning medical judgment is required in order for Lucas to prove the falsity of the diagnoses.

In sum, Lucas's allegation of intentional infliction of emotional distress sounds in medical malpractice because the alleged actions occurred during the course of a professional relationship and the claim requires an examination of medical expertise or medical judgment in order for Lucas to prevail. Accordingly, the trial court erred by denying defendants' motion for summary disposition with respect to the claim for intentional infliction of emotional distress.

## 2. FRAUD AND SILENT FRAUD

Defendants next argue that the trial court erred when it denied their motion for summary disposition on Lucas's claims of fraud and silent fraud. We agree.

A plaintiff asserting a claim of fraud must demonstrate these six elements: (1) that the defendant made a material representation; (2) that it was false; (3) that the defendant made the representation knowing that it was false or made it recklessly without knowledge of its truth; (4) that the defendant intended that the plaintiff would act on the representation; (5) that the plaintiff relied on the representation; and (6) that the plaintiff suffered injury as a result of having relied on the representation. *Cooper v Auto Club Ins Ass'n*, 481 Mich 399, 408; 751 NW2d 443 (2008).

To prove silent fraud, also known as fraudulent concealment, the plaintiff must show that the defendant suppressed the truth with the intent to defraud

the plaintiff and that the defendant had a legal or equitable duty of disclosure. *Roberts v Saffell*, 280 Mich App 397, 403-404; 760 NW2d 715 (2008), aff'd 483 Mich 1089 (2009). A plaintiff cannot merely prove that the defendant failed to disclose something; instead, "a plaintiff must show some type of representation by words or actions that was false or misleading and was intended to deceive." *Id.* at 404.

Defendants argue that Lucas's claim of fraud sounds in medical malpractice. We agree. The gravamen of Lucas's fraud complaint is that Awaad communicated the diagnoses of epilepsy/seizure disorder "when he knew that such disorders did not in fact exist." Similar to Lucas's claim of intentional infliction of emotional distress, this claim requires proof that Lucas's children "did not in fact" suffer from seizure/epilepsy disorder. This evidence requires the presentation of expert testimony addressing questions involving the exercise of medical judgment or medical competency. Therefore, for the reasons we stated earlier, we conclude that Lucas's claim of fraud sounds in medical malpractice.

With respect to Lucas's silent fraud claim, defendants argue that there "is no duty owed to a parent that would give rise to a claim by the parent against the health care provider." We agree. While duty is irrelevant in a fraud claim, it is relevant in a silent fraud claim. *Roberts*, 280 Mich App at 403-404. As noted earlier, in order for "the suppression of information to constitute silent fraud there must exist a legal or equitable duty of disclosure." *Id.* at 404. Regarding duty, Lucas alleged the following in her complaint:

  • Defendants owed a duty to Lucas to notify her that Awaad "had engaged in a systematic pattern and practice of falsely diagnosing epilepsy/seizure disorder in hundreds of his pediatric patients."

• Awaad owed a duty to Lucas "to refrain from communicating to [her] the diagnosis of . . . epilepsy/seizure disorder . . . when he knew that such disorders did not in fact exist."

• Defendants "had a duty to report [Awaad's] false diagnosis, treatment and billings to appropriate government agencies pursuant to federal law."

Whether a duty exists is a question of law, not a question of fact. *Valcaniant v Detroit Edison Co*, 470 Mich 82, 86; 679 NW2d 689 (2004). "[O]nly factual allegations, not legal conclusions, are to be taken as true under [MCR 2.116(C)(8)]." *Davis v Detroit*, 269 Mich App 376, 379 n 1; 711 NW2d 462 (2006). At the outset, we note that the last two alleged duties are not pertinent to Lucas's claims of silent fraud. A duty to "refrain from communicating" is not equivalent to a duty to disclose. And defendants' alleged duty to report to government agencies is not a duty to disclose to Lucas.

Regarding Lucas's first alleged duty, we hold that Lucas failed to provide sufficient facts to support a conclusion that defendants owed her a duty to inform her of Awaad's prior conduct. In short, the mere fact that defendants were healthcare providers for her children, or that Lucas was in a professional relationship with Awaad, is insufficient to create such a duty to disclose. It is established that physicians do not have a duty to disclose their success rates to patients in order to obtain informed consent for particular medical procedures. *Wlosinski*, 269 Mich App at 308-311. While Lucas is not suggesting that defendants had a duty to disclose Awaad's "success rates," Lucas maintains that defendants had a duty to disclose Awaad's alleged history of fraud related to his prior seizure disorder diagnoses. We conclude that this is a distinction without an appreciable difference; both instances involve dis-

closing alleged past poor performance. Moreover, if Awaad had no duty to disclose his prior conduct, we see no rationale for extending this duty to disclose to the other defendants. That outcome would result in the nonattending defendants owing a *greater* duty than the treating physician, which would be illogical. Therefore, defendants' motion for summary disposition under MCR 2.116(C)(8) should have been granted with respect to Lucas's silent fraud claims.

B. DOCKET NO. 292786

In Docket No. 292786, plaintiffs are parents of children who were allegedly falsely diagnosed with epilepsy/seizure disorder by Awaad. They brought multiple claims against defendants, but the only one relevant on appeal is plaintiffs' claim under the MCPA. We hold that the trial court erred by denying defendants' motion for summary disposition with respect to plaintiffs' MCPA claim.

The MCPA prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce." MCL 445.903(1). Plaintiffs' complaint alleges that defendants violated the MCPA by engaging in improper coding and billing practices that included "false, misleading and deceptive acts and/or omissions," but did not involve medical judgment. They allege that the Oakwood defendants were implicit in Awaad's fraudulent billings by entering into revenue-sharing agreements that gave him the incentive to engage in these fraudulent practices and by accepting a share of the illegally obtained billings. They contend that Awaad's practice of billing patients and their insurers on the basis of intentionally false diagnoses violated MCL 445.903(1)(s) (failure to disclose material facts to a consumer), (u) (failure to refund to a customer

payment for a terminated agreement), (bb) (false representations of material fact), and (cc) (failure to reveal facts that are material to the transaction in view of favorable representations).

In *Nelson v Ho*, 222 Mich App 74; 564 NW2d 482 (1997), the plaintiff asserted an MCPA claim against a defendant surgeon, alleging that he used deceptive practices by falsely advising the plaintiff that he used dissolvable sutures in her nasal surgery. *Id.* at 77-78. This Court concluded that the practice of medicine could neither be entirely excepted from nor entirely included in the definition of "trade or commerce" and held "that only allegations of unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of the entrepreneurial, commercial, or business aspect of a physician's practice may be brought under the MCPA." *Id.* at 83. In contrast, "[a]llegations that concern misconduct in the actual performance of medical services or the actual practice of medicine would be improper" under the MCPA. *Id.* This Court concluded that the plaintiff's claim was not based on practices in trade or commerce, explaining:

> We do not consider either one of these allegations to charge defendant with misconduct in the entrepreneurial, commercial, or business aspect of his practice. Rather, we consider these to be principally attacks on the actual performance of defendant's medical services, which would be more appropriately addressed in the context of a timely filed medical malpractice claim. Therefore, the MCPA does not apply, and plaintiff has failed to state a claim upon which relief can be granted. [*Id.* at 84.]

In the present case, plaintiffs argue that their claim is based on the entrepreneurial, commercial, and business aspect of the medical practice because it is based on fraudulent billing practices. They emphasize that Awaad falsely diagnosed patients with epilepsy in order

to maximize his earnings under his employment and revenue-sharing agreements and that the Oakwood defendants participated in this fraud by entering into revenue-sharing agreements that gave Awaad an incentive to falsely diagnose patients, by cooperating in Awaad's fraudulent billings, and by sharing in Awaad's illegal gains. Similar to Lucas's fraud claims in Docket No. 292785, plaintiffs' MCPA claims are not based on an alleged mistake in medical judgment but instead on alleged fabrications for the purpose of enriching Awaad and the Oakwood defendants. Plaintiffs allege that there was no medical judgment involved in issuing false diagnoses for financial gain. This claim therefore pertains to the entrepreneurial, commercial, and business aspects of medical practice under the MCPA.

However, MCL 445.904(1)(a) provides that the MCPA does not apply to "[a] transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States." Two years after this Court issued its opinion in *Nelson*, our Supreme Court held that in determining whether a transaction or conduct is outside the scope of the MCPA, "the relevant inquiry is not whether the specific misconduct alleged by the plaintiffs is 'specifically authorized.' Rather, it is whether the *general* transaction is specifically authorized by law, regardless of whether the specific misconduct alleged is prohibited." *Smith v Globe Life Ins Co*, 460 Mich 446, 465; 597 NW2d 28 (1999) (emphasis added).

Because the state specifically authorizes the general transaction here, plaintiffs' MCPA claim must fail. This situation is analogous to the situation in *Liss v Lewiston-Richards, Inc*, 478 Mich 203; 732 NW2d 514 (2007). In *Liss*, the plaintiffs sued the defendant, a

residential homebuilder, under the MCPA, alleging that the defendant failed to timely complete construction of the plaintiffs' home in accordance with the building contract and that the construction was not done in a workmanlike manner. *Id.* at 206-207. The defendant asserted that the transaction at issue, residential homebuilding, was excepted from the MCPA under MCL 445.904(1)(a) because home construction is a licensed and regulated industry. *Id.* at 207. The Michigan Supreme Court agreed, holding that the statutory exception applied because residential homebuilders are licensed under the Occupational Code, MCL 339.101 *et seq.*, and are regulated by the Residential Builders' and Maintenance and Alteration Contractors' Board pursuant to a set of administrative rules. The Court concluded that the *general* transaction of contracting to build a residential home is thus specifically authorized by law and therefore excepted from the MCPA. *Liss*, 478 Mich at 213-214.

There is no dispute that the practice of medicine is specifically authorized and regulated by law. See MCL 333.17001 to MCL 333.17084. Accordingly, plaintiffs' MCPA claim is barred by that statute's exception for transactions specifically authorized by law, MCL 445.904(1)(a); *Smith*, 460 Mich at 465, and the trial court erred when it failed to grant defendants' motion for summary disposition on this claim.

### C. DOCKET NO. 295973

#### 1. DEFENDANTS' AFFIDAVITS OF MERITORIOUS DEFENSE

Defendants argue that the trial court erred by concluding that defendants' affidavits of meritorious defense failed to satisfy the statutory requirements of MCL 600.2912e. We agree, and because we agree, we

also reverse the trial court's entry of default against defendants based on the trial court striking defendants' affidavits. However, we hold that the trial court correctly struck Awaad's affidavit of meritorious defense as untimely.

The question of whether an affidavit of meritorious defense is sufficient under MCL 600.2912e is reviewed de novo as a question of law. See *Jackson v Detroit Med Ctr*, 278 Mich App 532, 545; 753 NW2d 635 (2008) (whether a notice of intent complies with statutory requirements is reviewed de novo as a question of law). The question of whether Awaad's affidavit was permissibly filed also presents a question of law subject to de novo review. See *id.*

In a malpractice claim, the plaintiff must file an affidavit of merit along with the complaint. MCL 600.2912d. The defendant, in turn, must file an affidavit of meritorious defense. MCL 600.2912e(1) provides the requirements for an affidavit of meritorious defense:

> (1) . . . The affidavit of meritorious defense shall certify that the health professional has reviewed the complaint and all medical records supplied to him or her by the defendant's attorney concerning the allegations contained in the complaint and shall contain a statement of each of the following:
>
> (a) The factual basis for each defense to the claims made against the defendant in the complaint.
>
> (b) The standard of practice or care that the health professional or health facility named as a defendant in the complaint claims to be applicable to the action and that the health professional or health facility complied with that standard.
>
> (c) The manner in which it is claimed by the health professional or health facility named as a defendant in the complaint that there was compliance with the applicable standard of practice or care.

(d) The manner in which the health professional or health facility named as a defendant in the complaint contends that the alleged injury or alleged damage to the plaintiff is not related to the care and treatment rendered.

#### a. DUCHOWNY AND JOHNSTON AFFIDAVITS

Pursuant to MCL 600.2912d, the minor plaintiffs supported their medical malpractice claims with affidavits of merit executed by Kohrman. All the affidavits of merit are identical, with only the name of the child plaintiff being changed. Kohrman averred, in pertinent part, that the applicable standard of care required Awaad to do the following:

3. Perform or otherwise obtain examinations and/or testing to confirm or to rule out the condition of epilepsy. Such testing ... include[s], but [is] not limited to, EEGs, MRIs, PET and other diagnostic and imaging studies.

4. Properly and accurately read the results of testing to confirm or to rule out the condition of epilepsy. Such test results include, but are not limited to, EEGs, MRIs, PET and other diagnostic and imaging studies.

Kohrman also averred that Awaad breached the standard of care by failing to comply with the above requirements.

In response, defendants filed (amended) affidavits of meritorious defense by Duchowny and Johnston on July 7, 2009. Duchowny stated that the applicable standard of care for a pediatric neurologist "is to appropriately evaluate, examine, monitor, diagnose, and treat a patient in the same set of circumstances" as each plaintiff. Duchowny further stated:

The standard of practice is especially based upon clinical information such as patient history and data received from the patient's family. The standard of practice required

taking into account the above information, in coordination with examination and evaluation of the patient.

While it is within the standard of practice for a pediatric neurologist to order EEG testing or to consider the results of EEG testing or other testing that is performed, EEG testing is performed because it may provide information that would confirm a diagnosis based on clinical history, or because it may help in selecting which anti-seizure medication, among many possible anti-seizure medications, should be provided to a patient. Some anti-seizure medications can accentuate seizures, and EEG testing may help to determine whether this is occurring.

The standard of practice does not require that a pediatric neurologist order EEG testing or rely on EEG tests to determine whether a diagnosis of epilepsy/seizure disorder should be made, or to determine the course of treatment. A patient's clinical history and physical findings alone, if suggestive of a seizure disorder/epilepsy, are sufficient to support both a diagnosis of epilepsy/seizure disorder and the propriety of a particular course of treatment for that condition. The existence of a "normal" EEG test, and even multiple "normal" EEGs, cannot rule out epilepsy/seizure disorder, and cannot "override" or negate a clinical history and physical findings that are suggestive of epilepsy/seizure disorder.

Duchowny opined that Awaad complied with the applicable standard of care in treating the minor plaintiffs. Duchowny also provided summaries of the care provided for each child.

The trial court determined that defendants' affidavits were deficient because they did not specifically address whether the standard of care required Awaad to correctly read and interpret the EEG test results and whether Awaad breached that standard of care when he failed to correctly read and interpret the EEGs. As a result, the trial court concluded that "the affidavits of meritorious defense are substantively devoid of the statutorily required content under MCL 600.2912e as to these issues."

We conclude that the trial court erred when it made this determination. While we agree that the affidavits did not state that Awaad correctly read and interpreted the EEG tests, the affidavits clearly identified defendants' defense against this claim. Typically, defenses are based on an assertion that the defendant did not breach the applicable standard of care, which is but one element in a malpractice case.[4] However, defenses are not limited to this element. If any element in a malpractice claim is not met, then a plaintiff cannot prevail. In this case, defendants' affidavit of meritorious defense attacked plaintiffs' specific claim that Awaad had misinterpreted the EEG tests by addressing the causation element. The affidavit stated:

> As to the EEG testing in particular, any claimed acts or alleged omissions with respect to EEG testing did not cause any injury because the EEG tests, regardless of their results, could not have negated or overridden the clinical diagnosis in these cases, and because the diagnosis and treatment were within the standard of practice, regardless of any EEG test results.

Thus, for this *particular* defense, there is no further factual basis that would help develop this theory. MCL 600.2912e(1)(a) only requires a "factual basis for *each defense*," not a factual basis for each *claim* asserted by the plaintiff. If no factual basis is applicable for a particular defense, then no factual basis needs to be, or could be, provided. We note that the affidavits of meritorious defense did provide extensive factual bases for

---

[4] In a medical malpractice case, a plaintiff must establish (1) the appropriate standard of care governing the defendant's conduct, (2) that the defendant breached that standard of care, (3) that the plaintiff was injured, and (4) that defendant's breach of the standard of care proximately caused plaintiff's injuries. See *Kalaj v Khan*, 295 Mich App 420, 426; 820 NW2d 223 (2012).

defenses related to other aspects of plaintiffs' malpractice claim,[5] which are not at issue on appeal.

With respect to plaintiffs' claim that the standard of care requires the pediatric neurologist to order EEG testing and to correctly interpret EEG testing, defendants' affidavit from Duchowny addressed the issue as follows:

> The standard of practice does not require that a pediatric neurologist order EEG testing or rely on EEG tests to determine whether a diagnosis of epilepsy/seizure disorder should be made, or to determine the course of treatment. A patient's clinical history and physical findings alone, if suggestive of a seizure disorder/epilepsy, are sufficient to support both a diagnosis of epilepsy/seizure disorder and the propriety of a particular course of treatment for that condition. The existence of a "normal" EEG test, and even multiple "normal" EEGs, cannot rule out epilepsy/seizure disorder, and cannot "override" or negate a clinical history and physical findings that are suggestive of epilepsy/seizure disorder.

The affidavit from Johnston addressed the issue almost identically. Thus, the affidavits of meritorious defense adequately address this issue by providing a different standard of care.

In sum, plaintiffs' affidavits of merit stated that the applicable standard of care required Awaad to understand and recognize the signs and symptoms of epilepsy, recognize that the signs and symptoms displayed by his patients were inconsistent with epilepsy, and perform testing, including EEGs, to "confirm or to rule out the condition of epilepsy." Plaintiffs' affidavits also provided that the standard of care required the physician to "[p]roperly and accurately read the results" of the

---

[5] For example, the seven-page affidavit regarding patient Mariah Martinez contains 15 paragraphs of facts relating to her various office visits and treatment.

tests, including EEGs, to confirm or rule out the condition of epilepsy. Defendants' affidavits sufficiently responded to these assertions by stating that the applicable standard of practice requires a pediatric neurologist to base a diagnosis of epilepsy on the patients' signs, symptoms, physical condition, and clinical history. Defendants' expert stated that the standard of practice does not involve relying on EEG test results to confirm or rule out a diagnosis of epilepsy, although the physician might consider EEG test results in making decisions regarding the patients' treatment. Moreover, defendants' expert stated that any alleged breach involving misreading or misinterpreting an EEG test would not have affected any diagnosis.

As a result, the trial court erred when it struck Duchowny's and Johnston's affidavits of meritorious defense.

### b. AWAAD'S AFFIDAVIT

After plaintiffs' delay in serving defendants with their complaints and affidavits of merit, the trial court granted defendants a 91-day stay of proceedings to allow them sufficient time to prepare and file affidavits of meritorious defense. Consequently, defendants were required to file and serve affidavits of meritorious defense on or before January 14, 2009. At issue is whether Awaad's affidavit of meritorious defense was untimely when it was filed on July 7, 2009, the same date that the other amended affidavits of meritorious defense were filed pursuant to the trial court's order of June 23, 2009.

Defendants argue that Awaad's affidavit should be treated as an amendment of the previously filed affidavits. We disagree. Awaad's affidavit was an entirely new affidavit, not an amendment of a previously submitted

affidavit. Accordingly, defendants' failure to file the affidavit by the January 14, 2009, deadline precluded them from subsequently filing it under the guise of an "amendment."

Defendants also contend that Awaad's affidavit relates back to the timely filed affidavits of meritorious defense and, therefore, is permissible under MCR 2.118. MCR 2.118(A)(1) provides that a party may amend a pleading by right within 14 days after being served with a responsive pleading or within 14 days after serving the pleading if a responsive pleading is not required. Outside of this time frame, a party may not amend a pleading unless the court grants leave to do so or the adverse party consents in writing. MCR 2.118(A)(2). As amended effective May 1, 2010, MCR 2.118(D) provides:

> An amendment that adds a claim or defense relates back to the date of the original pleading if the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth, or attempted to be set forth, in the original pleading. *In a medical malpractice action, an amendment of an affidavit of merit or affidavit of meritorious defense relates back to the date of the original filing of the affidavit.* [Emphasis added.]

The italicized sentence became effective May 1, 2010, after the trial court struck Awaad's affidavit as untimely. Similarly, MCR 2.112(L)(2)(b) was amended effective May 1, 2010, and now provides that "[a]n affidavit of merit or meritorious defense may be amended in accordance with the terms and conditions set forth in MCR 2.118 and MCL 600.2301." In *Ligons v Crittenton Hosp*, 490 Mich 61, 88; 803 NW2d 271 (2011), our Supreme Court held that these amendments do not apply retroactively. Accordingly, Awaad's affidavit, even if it were deemed an amendment, would not be permitted under the amended court rules.

The Supreme Court also held that an affidavit of merit is not a pleading and, as such, may not be amended under the previous version of MCR 2.118. *Id.* at 81. The Court concluded, "Because permitting amendment of a defective AOM [affidavit of merit] runs counter to the established statutes, court rules, and cases governing this area of law, we hold that a plaintiff may not amend a deficient AOM under the version of MCR 2.118 in effect during the pendency of this suit in the trial court." *Id.* at 85. This holding applies by analogy to affidavits of meritorious defense under MCL 600.2912e. Accordingly, the trial court properly struck Awaad's affidavit.

### 2. PLAINTIFFS' AFFIDAVIT OF MERIT

Defendants next argue that the trial court erred when it failed to find plaintiffs' affidavits of merit deficient. We disagree. Whether plaintiffs' affidavits of merit complied with the requirements of MCL 600.2912d is reviewed de novo as a question of law. See *Jackson,* 278 Mich App at 545.

MCL 600.2912d(1) provides that the plaintiff in a medical malpractice action must file with the complaint "an affidavit of merit signed by a health professional who the plaintiff's attorney reasonably believes meets the requirements of an expert witness under [MCL 600.2169]." The affidavit must contain a statement of each of the following:

(a) The applicable standard of practice or care.

(b) The health professional's opinion that the applicable standard of practice or care was breached by the health professional or health facility receiving the notice.

(c) The actions that should have been taken or omitted by the health professional or health facility in order to have complied with the applicable standard of practice or care.

(d) The manner in which the breach of the standard of practice or care was the proximate cause of the injury alleged in the notice. [MCL 600.2912d(1).]

The failure to include any of these required items of information renders the affidavit of merit insufficient. *Ligons*, 490 Mich at 77.

In attempting to comply with MCL 600.2912d(1)(a), plaintiffs' affidavits of merit set forth standards of care for Awaad and the other defendants that can be summarized as follows:

• Defendants were required to understand the signs and symptoms of epilepsy;

• Defendants were required to recognize that the patients did not exhibit those symptoms;

• Defendants were required to order testing, including EEGs, MRIs, and PET tests, to confirm or rule out the condition of epilepsy;

• Defendants were required to accurately interpret those test results;

• Defendants were required to refer the patients to, and/or obtain consultation from, physicians with the education, training, and experience to recognize the signs and symptoms of epilepsy;

• Defendants were required to refrain from diagnosing and undertaking procedures related to epilepsy when they were not qualified to do so;

• Defendants were required to refrain from administering and prescribing anti-seizure medications when the patients did not suffer from epilepsy;

• Defendants were required to refrain from diagnosing patients as suffering from epilepsy when they did not; and

• Defendants were required to refrain from ordering/performing testing which was unnecessary, including, but not limited to, EEG testing.

In addressing MCL 600.2912d(1)(b), the affidavits then, by using the exact same verbiage from the standard-of-care section of the affidavit, stated that defendants breached the various standards of care. As an example, the following is how the affidavit addressed the first standard of care with respect to Awaad:

> 4. The applicable standard of practice or care in this matter required a physician practicing the specialty of pediatric neurology[,] and specifically Yasser Awaad, M.D., to:
>
> 1. Appreciate and understand the signs and symptoms associated with the condition of epilepsy.
>
> * * *
>
> 8. It is my opinion that Yasser Awaad, M.D. breached the applicable standard of practice or care by failing to:
>
> 1. Appreciate and understand the signs and symptoms associated with the condition of epilepsy.

This process was repeated for each of the nine standards of care provided, thereby satisfying the requirements of MCL 600.2912d(1)(b) and (c).

Additionally, the requirement under MCL 600.2912d(1)(d) was met as well. Our Supreme Court has noted that an affidavit

> answering the question "How was the breach the proximate cause of the injury?" requires more than "The breach caused the injury." In other words, the mere correlation between alleged malpractice and an injury is insufficient to show proximate caus[ation]. [*Ligons*, 490 Mich at 77-78, citations and quotation marks omitted).]

The affidavit of merit explained that Awaad's wrongful diagnosis resulted in the children and their parents having to unnecessarily attend numerous office visits and unnecessarily submit to EEG, MRI, and other

testing. The affidavit also described that the incorrect diagnoses resulting in the prescription of medication that not only was not needed, but also caused adverse side effects, such as delays in cognition and speech. These explanations address the salient question of *how* the breaches proximately caused injuries to the plaintiff children.

Defendants contend that these assertions do not provide specific information with respect to the applicable standard of care and Awaad's failure to comply with that standard. Defendants assert that the affidavits of merit are unacceptably vague because they do not identify what testing was done, or what testing should have been done, or what signs and symptoms each patient presented. Defendants further argue that the affidavits of merit do not explain how the alleged breaches of the standard of care led to an incorrect diagnosis, or how compliance with the standard of care would have avoided the incorrect diagnosis and unnecessary treatment. However, this lack of specificity does not render the affidavits noncompliant with the statute. Because we conclude that the affidavits of merit met the requirements of MCL 600.2912d(1), the trial court did not err when it denied defendants' motion to strike.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. No costs are taxable pursuant to MCR 7.219, neither party having prevailed in full.

K. F. Kelly, P.J., and Boonstra, J., concurred with Wilder, J.