TIPTON v WILLIAM BEAUMONT HOSPITAL

Docket No. 252117. Submitted March 8, 2005, at Detroit. Decided April 19, 2005, at 9:05 a.m.

Janet Tipton brought an action under the Michigan Consumer Protection Act (MCPA), MCL 445.901 *et seq.*, in the Oakland Circuit Court against William Beaumont Hospital and Andrew Check, M.D., seeking damages for emotional and mental personal injuries, pain, and suffering resulting from the defendants' failure to inform the plaintiff before she chose Check as her doctor about five prior birth trauma medical malpractice suits involving Check. Check had provided prenatal and delivery services to the plaintiff. The plaintiff's child had died two months after its birth. The trial court, Richard D. Kuhn, J., granted summary disposition for the defendants on the bases that, although the case was properly pleaded under the MCPA, the allegations at issue were not facts material to a transaction, MCL 445.903(cc), i.e., hiring a doctor, or facts that could not have been reasonably known by the consumer, MCL 445.903(s). The plaintiff appealed.

The Court of Appeals *held*:

The gravamen of the case is medical malpractice, so it cannot be brought under the MCPA. Only allegations of unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of the entrepreneurial, commercial, or business aspect of a physician's practice may be brought under the MCPA. The failure to inform of prior medical malpractice suits occurred before the professional relationship was initiated. However, because the emotional and mental injuries, pain, and suffering alleged would have occurred after the plaintiff chose Dr. Check and within the professional relationship, those injuries would have had to be derived from her belief of his unreliability and inability to render safe prenatal and delivery care, which are questions involving medical judgment requiring expert testimony. Not being facts within the realm of a jury's common knowledge and experience, the issues involved contain the distinguishing characteristics of a medical malpractice

case, instead of an action under the MCPA. The trial court came to the correct result, but for the wrong reasons.

Affirmed.

CONSUMER PROTECTION — MICHIGAN CONSUMER PROTECTION ACT — MEDICAL DOCTORS — MEDICAL MALPRACTICE CASES.

The Michigan Consumer Protection Act applies to a medical doctor only in relation to any unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of the entrepreneurial, commercial, or business aspect of the physician's practice; emotional and mental injuries occurring to a patient within the professional relationship, which injuries are derived from the patient's belief in the physician's unreliability and inability to render competent medical care, concern issues characteristic of a medical malpractice case, i.e., questions involving medical judgment requiring expert testimony, and not issues characteristic of an action under the act (MCL 445.901 *et seq.*).

*Daryle Salisbury* for the plaintiff.

*O'Connor, DeGrazia, Tamm & O'Connor, P.C.* (by *Julie McCann O'Connor* and *James E. Tamm*), for the defendants.

Before: WILDER, P.J., and FITZGERALD and KELLY, JJ.

KELLY, J. Plaintiff Janet Tipton filed claims against defendants William Beaumont Hospital (Beaumont) and Andrew Check, M.D. (Check), under the Michigan Consumer Protection Act (MCPA), MCL 445.901 *et seq.*, alleging that they failed to inform her that Check had been involved in five prior birth trauma medical malpractice lawsuits, none of which had resulted in a verdict or settlement against him.[1] The trial court granted summary disposition in defendants' favor on

---

[1] Regarding two of the five cases mentioned in plaintiff's complaint, Check was not a named defendant in one and was not served with a complaint in the other. In the remaining three, two were voluntarily dismissed and the other was dismissed without a settlement.

the basis that this information was not material to the transaction between plaintiff and defendants and that it could have reasonably been known by plaintiff. Plaintiff appeals as of right the trial court's order granting summary disposition for defendants. We affirm. When a plaintiff's claim, read as a whole, encompasses a professional relationship and raises questions involving medical judgment, the gravamen of the case is medical malpractice and it cannot be brought under the MCPA.

## I. FACTS

Plaintiff filed a complaint[2] alleging that, after she became pregnant, she "was a consumer actively seeking a reliable physician who would provide plaintiff with safe prenatal medical care and delivery services for herself and her baby." At that time, plaintiff alleged, Beaumont advertised that "there is no better place to find a doctor" than at Beaumont through Beaumont's referral and information service. Plaintiff contacted a representative of Beaumont's physician referral and information service. The representative sent plaintiff a letter indicating Beaumont's recommendation of several doctors. The letter also stated: "I hope the doctor I've recommended will live up to your expectations--both professionally and personally." Included with the letter was a brief curriculum vitae for each doctor that indicated that the doctor was on the staff at Beaumont and that noted the doctor's board certification, education, residency, and other membership information. There was no information regarding the doctors' prior involvement in medical malpractice lawsuits.

---

[2] The complaint stated, "There is no other pending or resolved civil action arising out of the transaction of occurrence alleged in the Complaint." But plaintiff asserts on appeal that there is now a medical malpractice action pending.

Plaintiff alleged that Beaumont "knew or should have known that [Check] had been named in at least five professional negligence medical malpractice lawsuits." Plaintiff alleged that Beaumont had "common law and statutory duties":

> a. To comply with MCL 445.903(s) by revealing material facts to plaintiff regarding any physician that co-defendant was referring if the omission of such facts would tend to mislead or deceive plaintiff regarding the referral of a physician such as co-defendant [Check];
>
> b. To comply with MCL 445.903(cc) by revealing material facts about the referred physician's background that would be helpful to plaintiff in light of the presentation of facts about the referred physician made in a positive manner;
>
> c. To provide plaintiff . . . with relevant information about any referred physician that would enable plaintiff to make an informed decision in selecting a physician to treat plaintiff and delivery plaintiff's baby;
>
> d. That it is incumbent upon [Beaumont] that its agents or employees not omit relevant, or material facts, such as the referred physician's professional negligence claims or medical malpractice cases or experiences about which co-defendant knew or should have known since that information is very helpful and relevant to plaintiff in making her decision regarding using or not using the services of the referred physician. That more specifically such information would enable plaintiff to have accurate and relevant background information to then discuss specifics with the referred physician.

Plaintiff alleged a similar count against Check. Although she did not allege what representations Check made, she later filed an affidavit in which she attested that Check orally "presented himself and information about his background in a very positive manner including giving me assurance that he was very experienced with potentially high risk pregnancies." Plaintiff alleged that defendants "did breach the above duties" and

that "as a proximate result" of these breached duties she "sustained emotional and mental personal injuries[,] pain and suffering." Plaintiff alleged no other damages or losses.

Defendants filed a motion for summary disposition arguing that (1) the practice of medicine is not subject to the MCPA, (2) failure to disclose prior lawsuits is not a violation of the MCPA, and (3) prior lawsuits that did not result in a verdict or settlement are not "material" to the transaction under the MCPA. Plaintiff responded to the motion, arguing in essence that defendants failed to reveal the material fact of Check's prior lawsuits before she decided to employ Check as her physician. She argued that Beaumont's advertising and promotion of physicians and Check's "participation and acceptance of new business referrals from [Beaumont] along with his own self-promotion" was a "business aspect" of the practice of medicine. Plaintiff further argued that the information was material because it would have permitted her to make an informed decision as a consumer of medical services.

At the hearing on this motion, plaintiff's counsel summarized plaintiff's claims as follows:

> What she complains about is that she was not given sufficient information in order to make that informed decision. The information that was provided and that is required by the Statute is that if the information provides a balance as to what takes place as to the part [sic] being able to make a decision.
>
> This information about this—the Doctor, Dr. Check's prior Medical Malpractice lawsuits would have been very significant, and very material to my client's decision. She did not have that information from either [Beaumont] or from Dr. Check himself.

\* \* \*

> She did not have the corresponding information about people and problems that had occurred, and she made a decision based on inadequate information.

After taking the matter under advisement, the trial court entered an order providing that defendants' motion was granted because "the facts at issue were not 'material' facts, 'material to the transaction,' or facts which could not be reasonably known by the consumer, under MCL 445.903(s) and (cc)."

## II. ANALYSIS

We review de novo a trial court's decision on a motion for summary disposition. Because the parties and the trial court relied on matters outside the pleadings, review under MCR 2.116(C)(10) is appropriate. Summary disposition under MCR 2.116(C)(10) is appropriate when there is no genuine issue with respect to any material fact and the moving party is entitled to judgment as a matter of law. *Driver v Hanley (After Remand),* 226 Mich App 558, 562; 575 NW2d 31 (1997).

Before we can determine whether the trial court correctly ruled that defendants' omissions regarding Check's prior medical malpractice lawsuits were reasonably knowable or material to plaintiff under MCL 445.903(s) and 445.903(cc), we must first address whether plaintiff's claims were properly brought under the MCPA in the first place. In *Nelson v Ho,* 222 Mich App 74, 83; 564 NW2d 482 (1997), this Court held "that only allegations of unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of the entrepreneurial, commercial, or business aspect of a physician's practice may be brought under the MCPA." But the Court distinguished that:

Allegations that concern misconduct in the actual perfor-
mance of medical services or the actual practice of medicine
would be improper. We do not consider the Legislature's use
of "trade or commerce" in defining the application of the act
to exhibit an intent to include the actual performance of
medical services or the actual practice of medicine. If we
were to interpret the act as such, the legislative enactments
and well-developed body of law concerning medical malprac-
tice could become obsolete. While we are aware of the
expense and difficulty in maintaining a medical malpractice
action, we do not think the MCPA was meant by the
Legislature to be an alternative to its specific statutory
scheme addressing medical malpractice claims. Only when
physicians are engaging in the entrepreneurial, commercial,
or business aspect of the practice of medicine are they
engaged in "trade or commerce" within the purview of the
MCPA. [*Id.* at 83-84.]

This Court further explained that "[i]n determining
whether an action is proper under the MCPA, courts
must examine the *nature of the conduct complained of*
case by case and determine whether it relates to the
entrepreneurial, commercial, or business aspect of the
practice of medicine." *Id.* at 84 (emphasis added).[3] It is
well established that "[t]he gravamen of an action is
determined by reading the claim as a whole," *Simmons
v Apex Drug Stores, Inc,* 201 Mich App 250, 253; 506
NW2d 562 (1993), and looking "beyond the procedural
labels to determine the exact nature of the claim."
*MacDonald v Barbarotto,* 161 Mich App 542, 547; 441
NW2d 747 (1987).

Further, in *Bryant v Oakpointe Villa Nursing Ctr,* 471
Mich 411, 422; 684 NW2d 864 (2004), our Supreme

---

[3] In *Nelson,* the plaintiff alleged that the defendant represented to her
that he would be using nondissolvable sutures and that the plaintiff did not
have sutures protruding through her skin. This Court determined that
these allegations "were principally attacks on the actual performance of
defendant's medical services, which would be more appropriately ad-
dressed in the context of a timely filed medical malpractice claim." *Id.* at
84.

Court addressed a medical malpractice claim that was pleaded as an ordinary negligence claim. In so doing, it set forth the "two defining characteristics" of a medical malpractice claim:

> First, medical malpractice can occur only " 'within the course of a professional relationship.' " Second, claims of medical malpractice necessarily "raise questions involving medical judgment." [*Id.* at 422 (citations omitted).]

The *Bryant* Court explained:

> A professional relationship sufficient to support a claim of medical malpractice exists in those cases in which a licensed health care professional, licensed health care facility, or the agents or employees of a licensed health care facility, were subject to a contractual duty that required that professional, that facility, or the agents or employees of that facility, to render professional health care services to the plaintiff. [*Id.* (citation omitted).]

Accordingly, after ascertaining that the case involves a professional relationship, the next step is determining "whether the claim raises questions of medical judgment requiring expert testimony or, on the other hand, whether it alleges facts within the realm of a jury's common knowledge and experience." *Id.* at 423. Although our Supreme Court applied this test in the context of determining whether an ordinary negligence claim actually sounded in medical malpractice, the test succinctly sets forth the "two defining characteristics" of a medical malpractice claim. Therefore, we hold that it likewise applies in determining whether this MCPA claim actually sounds in medical malpractice.

The conduct plaintiff explicitly complained of in her complaint is Beaumont and Check's failure to inform her of Check's prior involvement in medical malpractice lawsuits, while they each made representations about his qualifications. This conduct, by itself, relates to the

commercial aspect of the practice of medicine because the representations are used to induce a prospective patient to choose a doctor. The alleged representations and omissions did not occur within the course of a professional relationship because they occurred before plaintiff chose Check as her doctor. But this alone is not determinative of whether plaintiff's claims as a whole encompass her professional relationship with defendants. Plaintiff alleged that she sought a reliable doctor who "would provide plaintiff with safe prenatal medical care and delivery services for herself and her baby." She alleged that, because of defendants' omissions of Check's prior medical malpractice lawsuits, she was misled and unable to make an informed choice, as a result of which she chose Check. Once plaintiff chose Check as her doctor, she entered into a professional relationship with Check and his employer Beaumont.

Plaintiff's claims encompass this professional relationship. Plaintiff further alleged that, as a result of choosing Check, she suffered "emotional and mental personal injuries[,] pain and suffering." Plaintiff did not allege that she suffered any tangible financial loss. Nor does she specify exactly what about her choice caused her pain and suffering. Nonetheless, reading her complaint as a whole, it is apparent that plaintiff alleged that Check was unreliable and unable to render safe prenatal and delivery care simply because he was involved in prior birth trauma medical malpractice lawsuits. It is also clear that plaintiff ultimately received prenatal and delivery care from Check.

But it does not follow from the fact that Check was involved in prior birth trauma medical malpractice lawsuits that he was unreliable or unable to render safe prenatal and delivery care. The medical profession is

highly regulated, yet there is no statutory, common-law, or other authority for the proposition that a doctor's involvement in prior medical malpractice lawsuits renders him unreliable per se or unable to provide safe medical care. Nor does it follow as a matter of "common knowledge and experience," *id.*, that, if a doctor has been sued before, he is unreliable or unable to provide safe medical care. A doctor who has been sued many times could render perfectly acceptable medical care while a doctor who has never been sued could render negligent care. Because Check's having been sued in the past does not *necessarily* render him unreliable or unable to provide safe medical care, plaintiff's claims would involve showing that Check was unreliable or unable to provide safe medical care. Therefore, her claims raise "questions involving medical judgment requiring expert testimony" rather than "facts within the realm of a jury's common knowledge and experience." *Id.* Reading plaintiff's complaint as a whole, we conclude that plaintiff's claims contain the distinguishing characteristics of a medical malpractice case.

This is not to say that claims against medical professionals could never be brought under the MCPA. Nonetheless, where the representations or omissions implicate a medical professional's ability to provide medical care and damages resulting from that care, the case raises questions of medical judgment and the gravamen of the case is medical malpractice.

Further supporting our conclusion that this case sounds in medical malpractice is plaintiff's assertion in her brief on appeal that she believes that the death of her "8 pound 12 ounce full-term baby" two months after his birth "would never had occurred if she had not been mislead [sic] and deceived into choosing Dr. Check

as her obstetrician." Thus plaintiff asserts that because of defendants' omissions about Check's prior lawsuits, she chose Check and consequently lost her baby. But this reasoning invokes the fallacy of *post hoc, ergo propter hoc*: merely because one event follows another does not mean that the first event caused the second. If we permitted plaintiff to seek damages for her "emotional and mental personal injuries [,] pain and suffering" that she allegedly sustained under these circumstances, we would be permitting her to recover damages from defendants for the death of her child without requiring her to prove that Check performed negligent medical care that caused the death of her child. As stated in *Nelson,* if we were to interpret the MCPA as such, "the legislative enactments and well-developed body of law concerning medical malpractice could become obsolete." *Nelson, supra* at 83. Therefore, even though plaintiff has labeled her claim as one brought under the MCPA, we conclude that it is principally an attack on Check's ability to provide medical care and the results of that care and must be addressed in a medical malpractice claim.[4] Accordingly, we conclude that defendants were entitled to judgment as a matter of law.

Although the trial court apparently determined that plaintiff's claims were properly pleaded under the MCPA and ruled that the omissions were not material to the transaction and plaintiffs could have reasonably known about Check's involvement in prior medical malpractice lawsuits, we affirm because the trial court reached the correct result even though the trial court erred in determining that plaintiff's claims were

---

[4] We make no representations, however, about whether this would be a viable medical malpractice claim.

properly filed under the MCPA. *Etefia v Credit Technologies, Inc,* 245 Mich App 466, 470; 628 NW2d 577 (2001).

Affirmed.

WILDER, P.J., concurred.

FITZGERALD, J. I concur in the result only.