PAUL v GLENDALE NEUROLOGICAL ASSOCIATES, PC

Docket No. 309927. Submitted January 15, 2014, at Detroit. Decided February 20, 2014, at 9:05 a.m. Leave to appeal sought.

Jennifer Paul brought an action in the Oakland Circuit Court against Glendale Neurological Associates, PC, alleging violations of the Medical Records Access Act (MRAA), MCL 333.26261 *et seq.*, and the Michigan Consumer Protection Act (MCPA), MCL 445.901 *et seq.*, as a result of defendant's refusal to provide plaintiff copies of her "medical chart including office notes, diagnostic test results, consulting physician reports, correspondence, and related documents[.]" Plaintiff had been allegedly injured at work and filed a workers' compensation claim. Her employer's insurance company hired Medicolegal Services, Inc., to obtain an independent medical evaluation (IME) of plaintiff. A doctor contracted by Medicolegal Services examined plaintiff and ordered an MRI and an arthrogram of plaintiff's shoulder, for which Medicolegal Services hired defendant. Plaintiff requested her records from defendant after the procedures were performed. The court, Wendy Potts, J., held that plaintiff had standing to sue under the MRAA but that the records she sought were not "medical records" as defined by the MRAA. The court also held that the MCPA did not apply to plaintiff's claim. The court entered an opinion and order granting summary disposition in favor of defendant, denying summary disposition in favor of plaintiff, and dismissing plaintiff's complaint with prejudice. Plaintiff appealed.

The Court of Appeals *held*:

1. The MRAA defines "medical record" as "information oral or recorded in any form or medium that pertains to a patient's health care, medical history, diagnosis, prognosis, or medical condition and that is maintained by a health care provider or health facility in the process of caring for the patient's health." MCL 333.26263(i). The phrase "caring for the patient's health" refers to records maintained in the course of providing some sort of diagnostic or treatment service for the treatment and betterment of the patient. The records of defendant's examination of plaintiff for the benefit of a third party were not produced "in the process of caring for the patient's health" within the meaning of the MRAA.

The MRAA does not apply in the context of an IME. The trial court properly granted summary disposition in favor of defendant on plaintiff's MRAA claim.

2. The arthrogram and MRI performed on plaintiff were performed on plaintiff at the request of Citizens Management for the business purpose of evaluating plaintiff's workers' compensation claim. The MCPA did not apply to those procedures because they were not undertaken "primarily for personal, family, or household purposes," MCL 445.902(1)(g). The trial court appropriately granted summary disposition in favor of defendant on plaintiff's MCPA claim.

Affirmed.

SERVITTO, P.J., concurring in part and dissenting in part, agreed with the majority that summary disposition was properly granted in favor of defendant with regard to the claim under the MCPA but would reverse the grant of summary disposition in favor of defendant and remand for the entry of summary disposition in favor of plaintiff with regard to the claim under the MRAA. To qualify as a "medical record" within the scope of the MRAA, a record must have only two qualities: (1) it must be information oral or recorded in any form or medium that pertains to a patient's health care, medical history, diagnosis, prognosis, or medical condition, and (2) it must be maintained by a health care provider or health facility in the process of caring for the patient's health. There is no serious dispute that the requested records met the first criterion. Judge SERVITTO would additionally find that the requested records met the second criterion. The phrase "caring for the patient's health" is the verb form of "health care," which the MRAA defines as "any care, service, or procedure provided by a health care provider or health facility to diagnose, treat, or maintain a patient's physical condition, or that affects the structure or a function of the human body." MCL 333.26263(d). The doctor who conducted the MRI and arthrogram for defendant indicated that he performed the tests in order to diagnose plaintiff and performed the tests in the process of caring for plaintiff's health. The second criterion was met. Health facilities and agencies that provide services to patients and are licensed under the Public Health Code must adopt and treat all patients in accordance with a policy providing that an individual who is or has been a patient or resident is entitled to inspect, or receive for a reasonable fee, a copy of the individual's medical record upon request in accordance with the MRAA. MCL 333.20201(2)(b). Because a "patient" is defined by the MRAA as an individual who receives or has received health care from a health care provider or

health facility, MCL 333.26263(n), and "health care" is defined by the MRAA as any care, service, or procedure provided by a health care provider or health facility to diagnose, treat, or maintain a patient's physical condition, or that affects the structure or a function of the human body, MCL 333.26263(d), the records sought by plaintiff were medical records within the meaning of the MRAA. Plaintiff was entitled to access the records consistent with both the MRAA and the Public Health Code.

1. MEDICAL RECORDS ACCESS ACT — INDEPENDENT MEDICAL EVALUATIONS — MEDICAL RECORDS.

The Medical Records Access Act provides that, except as otherwise provided by law or regulation, a patient or a patient's authorized representative has the right to examine or obtain the patient's medical record; the act defines a "medical record" as "information oral or recorded in any form or medium that pertains to a patient's health care, medical history, diagnosis, prognosis, or medical condition and that is maintained by a health care provider or health facility in the process of caring for the patient's health"; the phrase "in the process of caring for the patient's health" refers to records maintained in the course of providing some sort of diagnostic or treatment service for the treatment and betterment of the patient; a physician's goal in the particularized setting of an independent medical evaluation is to gather information for the examinee or a third party to use in employment or related financial decisions, not to provide a diagnosis or treatment of medical conditions; the Medical Records Access Act does not apply in the context of an independent medical evaluation (MCL 333.26263(i); MCL 333.26265(1)).

2. CONSUMER PROTECTION — MICHIGAN CONSUMER PROTECTION ACT — WORDS AND PHRASES — TRADE OR COMMERCE.

The Michigan Consumer Protection Act provides that unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce are unlawful; the act defines "trade or commerce" as "the conduct of a business providing goods, property, or service primarily for personal, family, or household purposes and includes the advertising, solicitation, offering for sale or rent, sale, lease, or distribution of a service or property, tangible or intangible, real, personal, or mixed, or any other article, or a business opportunity" (MCL 445.902(1)(g); MCL 445.903(1)).

*Adler Stillman, PLLC* (by *Barry D. Adler*), and *Donald M. Fulkerson* for plaintiff.

*The Juip Richtarik Law Firm* (by *Randall A. Juip* and *Anthony D. Pignotti*) for defendant.

Before: SERVITTO, P.J., and MURRAY and BOONSTRA, JJ.

BOONSTRA, J. Plaintiff appeals by right the opinion and order of the trial court granting summary disposition to defendant, denying plaintiff's motion for summary disposition, and dismissing plaintiff's complaint with prejudice. We affirm.

### I. PERTINENT FACTS AND PROCEDURAL HISTORY

Plaintiff allegedly injured her shoulder while at work and filed a workers' compensation claim. Plaintiff's employer's insurance company, Citizens Management, Inc., hired Medicolegal Services, Inc. to obtain an independent medical evaluation (IME) of plaintiff. Plaintiff was examined by Dr. Joseph Salama, who had been contracted by Medicolegal Services. Salama ordered an MRI and an arthrogram of plaintiff's left shoulder, for which Medicolegal Services hired defendant.[1]

Plaintiff underwent the MRI and arthrogram procedures on January 4, 2011. A report was then sent to Salama, who authored his own report and sent it to Citizens. On February 8, 2011, plaintiff's counsel wrote to defendant and requested copies of plaintiff's "medical chart including office notes, diagnostic test results, consulting physician reports, correspondence, and related documents[.]" Defendant declined to send the requested records.

---

[1] An arthrogram is "a test using X-rays to obtain a series of pictures of a joint after a contrast material (such as a dye, water, air, or a combination of these) has been injected into the joint." WebMD, *Arthrogram (Joint X-Ray)* <http://arthritis.webmd.com/arthrogram-joint-x-ray> (accessed January 7, 2014) [http://perma.cc/Y597-KHVS].

Plaintiff filed suit, alleging that defendant denied her access to records of those procedures in violation of the Medical Records Access Act (MRAA), MCL 333.26261 *et seq.*, and that this denial also constituted "an unfair, unconscionable, or deceptive method, act or practice in the conduct of trade or commerce" in violation of the Michigan Consumer Protection Act (MCPA), MCL 445.901 *et seq.* Defendant answered and denied that plaintiff was "a patient" because the services she received were "part of a legal evaluation pursuant to a [w]orker's [c]ompensation claim she had filed" and she "signed a consent [form] acknowledging that she was not receiving medical care and that no physician-patient relationship was being formed."

Both parties moved for summary disposition pursuant to MCR 2.116(C)(10). The trial court heard the motions on April 4, 2012. On April 6, 2012, the trial court entered a written opinion and order. It first found that plaintiff had standing to sue under the MRAA because her "allegations that she is a patient of [d]efendant and is entitled to access her records give her a substantial interest in the MRAA that confers standing." It then found that the records plaintiff sought were not "medical records" as defined by the MRAA because plaintiff "present[ed] no evidence that [d]efendant performed any part of its evaluation, ordered the MRI, or created any medical records while caring for [p]laintiff's health,"[2] and, therefore, plaintiff did not "demonstrate that she has a right to access the records. Thus, [d]efendant [was] entitled to summary disposition of [p]laintiff's MRAA claim." Finally, the trial court

---

[2] The MRAA defines "medical record" as "information oral or recorded in any form or medium that pertains to a patient's health care, medical history, diagnosis, prognosis, or medical condition and that is maintained by a health care provider or health facility in the process of caring for the patient's health." MCL 333:26263(i).

held that the MCPA did not apply to plaintiff's claim because the independent medical examination was "requested and paid for by the worker's compensation insurance carrier for the sole purpose of evaluating the merits of [p]laintiff's worker's compensation claim," and, citing *Zine v Chrysler Corp*, 236 Mich App 261, 273; 600 NW2d 384 (1999), the MCPA does not apply to services purchased primarily for business or commercial, rather than personal, purposes. This appeal followed.

## II. STANDARD OF REVIEW

We review a trial court's decision on a motion for summary disposition de novo. *Anzaldua v Neogen Corp*, 292 Mich App 626, 629; 808 NW2d 804 (2011). We also review issues of statutory interpretation de novo. *In re Conservatorship of Townsend*, 293 Mich App 182, 186; 809 NW2d 424 (2011).

A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Corley v Detroit Bd of Ed*, 470 Mich 274, 278; 681 NW2d 342 (2004). Summary disposition is appropriate if "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *McCoig Materials, LLC v Galui Constr, Inc*, 295 Mich App 684, 693; 818 NW2d 410 (2012). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds could differ." *Bronson Methodist Hosp v Auto-Owners Ins Co*, 295 Mich App 431, 441; 814 NW2d 670 (2012). "This Court reviews the motion by considering the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party." *Auto Club Group Ins Ass'n v Andrzejewski*, 292 Mich

App 565, 569; 808 NW2d 537 (2011). "When a motion under [MCR 2.116(C)(10)] is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his or her pleading, but must . . . set forth specific facts showing that there is a genuine issue for trial." MCR 2.116(G)(4); *Coblentz v City of Novi*, 475 Mich 558, 569; 719 NW2d 73 (2006).

"A court's primary purpose in interpreting a statute is to ascertain and effectuate legislative intent." *Mich Ed Ass'n v Secretary of State (On Rehearing)*, 489 Mich 194, 217; 801 NW2d 35 (2011). "[T]his task begins by examining the language of the statute itself. The words of a statute provide the most reliable evidence of [the Legislature's] intent . . . ." *United States Fidelity & Guaranty Co v Michigan Catastrophic Claims Ass'n (On Rehearing)*, 484 Mich 1, 13; 795 NW2d 101 (2009) (quotation marks and citation omitted). "The words used by the Legislature are given their common and ordinary meaning. If the statutory language is unambiguous, we presume that the Legislature intended the meaning that it clearly expressed, and further construction is neither required nor permitted." *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012).

### III. PLAINTIFF'S CLAIM UNDER THE MRAA

Plaintiff first argues that the trial court erred both when it granted summary disposition in favor of defendant on the basis that the records plaintiff sought were not within the scope of the MRAA and when it denied plaintiff's motion for summary disposition. The MRAA provides in relevant part that "[e]xcept as otherwise provided by law or regulation, a patient or his or her authorized representative has the right to examine or

obtain the patient's medical record." MCL 333.26265(1).
A "patient" means "an individual who receives or has
received health care from a health care provider or
health facility." MCL 333.26263(n). "Health care"
means "any care, service, or procedure provided by a
health care provider or health facility to diagnose, treat,
or maintain a patient's physical condition, or that
affects the structure or a function of the human body."
MCL 333.26263(d). Finally, the MRAA defines "medical
record" as "information oral or recorded in any form or
medium that pertains to a patient's health care, medical
history, diagnosis, prognosis, or medical condition and
that is maintained by a health care provider or health
facility in the process of caring for the patient's health."
MCL 333.26263(i).

The trial court granted defendant's motion for sum-
mary disposition under MCR 2.116(C)(10), reasoning
that the records plaintiff sought were not "medical
records" as defined by the MRAA because plaintiff
"present[ed] no evidence that [d]efendant performed
any part of its evaluation, ordered the MRI, or created
any medical records while caring for [p]laintiff's
health," and, therefore, plaintiff did not "demonstrate
that she has a right to access the records. Thus,
[d]efendant [was] entitled to summary disposition of
[p]laintiff's MRAA claim." We agree.

An IME differs significantly from the typical interac-
tion between a physician and patient. "In the particu-
larized setting of an IME, the physician's goal is to
gather information for the examinee or a third party to
use in employment or related financial decisions. It is
not to provide a diagnosis or treatment of medical
conditions." *Dyer v Trachtman*, 470 Mich 45, 51; 679
NW2d 311 (2004). The relationship is a "limited" one
that "does not involve the full panoply of the physi-

cian's typical responsibilities to diagnose and treat the examinee for medical conditions." *Id.* at 50. "[T]he general duty of diagnosis and treatment is inappropriate in the IME setting given the purpose of the examination." *Id.* at 52.

Plaintiff urges this Court to adopt a definition of the words "caring" and "care," culled from a dictionary,[3] that defines "caring" as "to give care," and that further defines "care" as "responsibility," "watchful attention," and "charge, supervision." Plaintiff further argues that adoption of these definitions necessarily results in finding that defendant was engaged "in the process of caring for [plaintiff's] health" when plaintiff underwent the examinations at issue. We disagree, because we do not find "the process of caring for the patient's health" to be consistent with the limited nature of a physician's duty in an IME context. Our Supreme Court has stated that, in the context of an IME, a physician owes a "limited duty" to "exercise care consistent with his professional training and expertise so as not to cause physical harm by negligently conducting the examination." *Dyer*, 470 Mich at 55.[4] However,

---

[3] Plaintiff states that this definition comes from "The Merriam-Webster Dictionary" but does not provide an edition number, date of publication, or page number.

[4] Because the "limited physician-patient relationship" recognized by our Supreme Court in the IME context "requires that the examiner conduct the examination in such a way as not to cause harm," it can result in a claim for medical malpractice. *Dyer*, 470 Mich at 53-54. We reject, however, as both hypothetical and incorrect, plaintiff's suggestion that absent access to records under the MRAA, an IME patient will be precluded from bringing a medical malpractice cause of action. MCL 600.2912b(5) specifically affords to a medical malpractice claimant "access to all medical records related to the claim that are in the control of the health professional or health facility." That access must be provided within 56 days after the claimant provides notice of intent to file a claim. *Id.* Thus, in the context of a medical malpractice action against an IME physician, a claimant is to be afforded access to the IME records

this duty does not constitute a duty to diagnose or treat an examinee's medical conditions. *Id.* at 51. We decline to adopt plaintiff's proposed definition of "caring for the patient's health" as meaning, essentially, any situation where a patient, for whatever reason, undergoes an examination by a medical professional. Read in context, it is clear that this phrase refers to records maintained in the course of providing some sort of diagnostic or treatment service for the treatment and betterment of the patient. See *Bush v Shabahang*, 484 Mich 156, 167; 772 NW2d 272 (2009) (statutory language should be interpreted with regard to context).

Plaintiff essentially asks this Court to interpret the statutory phrase "in the process of caring for the patient's health" so broadly that it is difficult to conceive of a record maintained by a health care provider or health facility that would not fit this criterion. Such an interpretation would essentially render portions of the statute nugatory, in contravention of our principles of statutory construction. *Apsey v Mem Hosp*, 477 Mich 120, 131; 730 NW2d 695 (2007) ("A statute is rendered nugatory when an interpretation fails to give it meaning or effect."). We therefore hold that records of defendant's examination of plaintiff for the benefit of a third party were not produced "in the process of caring for the patient's health," within the meaning of the MRAA, and that the MRAA does not apply in the context of an IME.

We affirm the trial court's grant of summary disposition to defendant regarding plaintiff's MRAA claim.

___

before the time for filing a complaint for malpractice, and before the time by which the claimant must file an expert witness's affidavit of merit. MCL 600.2912d; see also *Ligons v Crittenton Hosp*, 285 Mich App 337, 349; 776 NW2d 361 (2009).

IV. PLAINTIFF'S CLAIM UNDER THE MCPA

Plaintiff also argues that the trial court erred when it granted summary disposition in favor of defendant with respect to plaintiff's claims under the MCPA. We disagree.

The MCPA provides, in pertinent part, that "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce are unlawful," and sets forth several examples of proscribed activity. MCL 445.903(1); *Liss v Lewiston-Richards, Inc*, 478 Mich 203, 208; 732 NW2d 514 (2007). "Trade or commerce" is defined as "the conduct of a business providing goods, property, or service primarily for personal, family, or household purposes and includes the advertising, solicitation, offering for sale or rent, sale, lease, or distribution of a service or property, tangible or intangible, real, personal, or mixed, or any other article, or a business opportunity." MCL 445.902(1)(g). "Except in a class action, a person who suffers loss as a result of a violation of this act may bring an action to recover actual damages or $250.00, whichever is greater, together with reasonable attorneys' fees." MCL 445.911(2); *Gorman v American Honda Motor Co, Inc*, 302 Mich App 113, 130 n 5; 839 NW2d 223 (2013).

"Given the variety of deceptive practices prohibited by the act, a single act may violate more than one subsection." *Zine*, 236 Mich App at 282. "[O]nly allegations of unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of the entrepreneurial, commercial, or business aspect of a physician's practice may be brought under the MCPA." *Tipton v William Beaumont Hosp*, 266 Mich App 27, 32; 697 NW2d 552 (2005). In contrast, " '[a]llegations that concern misconduct in the actual performance of medical services or

the actual practice of medicine would be improper.' " *Id.* at 33, quoting *Nelson v Ho*, 222 Mich App 74, 83; 564 NW2d 482 (1997).

Plaintiff's complaint alleged that defendant violated MCL 445.903(1)(n),[5] (s),[6] and (bb)[7] when it "falsely told [p]laintiff that she had no right to obtain her medical records because she was not 'a patient.' " The trial court found that the MCPA did not apply to plaintiff's claim, adopting defendant's argument that its actions were not "trade or commerce" as defined by the act:

> Defendant's IME was requested and paid for by the worker's compensation insurance carrier for the sole purpose of evaluating the merits of Plaintiff's worker's compensation claim. Plaintiff did not contract for or purchase Defendant's services, and there is no evidence that Defendant provided services to Plaintiff for personal purposes. Because Plaintiff fails to establish a question of fact whether Defendant performed the IME for business purposes, the MCPA does not apply and Defendant is entitled to summary disposition of Plaintiff's MCPA claim.

Claims under the MCPA require an inquiry into the quality of the specific transaction at issue to determine whether the alleged violator provided "goods, property, or service primarily for personal, family, or household purposes . . . ." MCL 445.902(1)(g); *Noggles v Battle Creek Wrecking, Inc*, 153 Mich App 363, 367-368; 395

---

[5] "Causing a probability of confusion or of misunderstanding as to the legal rights, obligations, or remedies of a party to a transaction." MCL 445.903(1)(n).

[6] "Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer." MCL 445.903(1)(s).

[7] "Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is." MCL 445.903(1)(bb).

NW2d 322 (1986). Plaintiff's cursory argument that the tests performed were "personal" is unpersuasive, because it relies upon the conclusion that such tests were "diagnostic" in nature. The arthrogram and MRI performed on plaintiff were done at the request of Citizens Management for the business purpose of evaluating plaintiff's workers' compensation claim. Thus, the MCPA did not apply to those procedures because they were not undertaken "primarily for personal, family, or household purposes," MCL 445.902(1)(g), and the trial court appropriately granted summary disposition in favor of defendant on plaintiff's claims under the MCPA.

Affirmed.

MURRAY, J., concurred with BOONSTRA, J.

SERVITTO, P.J. (*concurring in part/dissenting in part*). While I agree that the trial court properly granted summary disposition in favor of defendant with respect to plaintiff's claims under the MCPA, I believe that the records plaintiff sought were within the scope of the MRAA. I, therefore, respectfully dissent from that part of the majority's opinion affirming the trial court's grant of summary disposition in favor of defendant on plaintiff's claim of violation of the MRAA.

As indicated by the majority, MCL 333.26265(1) provides a patient the right to examine or obtain his or her medical record except as otherwise provided by law or regulation. The MRAA defines "medical record" as "information oral or recorded in any form or medium that pertains to a patient's health care, medical history, diagnosis, prognosis, or medical condition and that is maintained by a health care provider or health facility in the process of caring for the

patient's health." MCL 333.26263(i). "Health care" means "any care, service, or procedure provided by a health care provider or health facility to diagnose, treat, or maintain a patient's physical condition, or that affects the structure or a function of the human body." MCL 333.26263(d). A "patient" means "an individual who receives or has received health care from a health care provider or health facility." MCL 333.26263(n).

In granting summary disposition in defendant's favor, the trial court held that the records sought were not "medical records within the meaning of the MRAA." The trial court specifically focused its attention on the words "in the process of caring for the patient's health," taken from the MRAA's definition of "medical record," MCL 333.26263(i), and determined that, because the arthrogram and MRI performed on plaintiff were not undertaken for the sake of her health, the records were not covered by the MRAA. The majority likewise concludes that because the records of defendant's examination of plaintiff were for the benefit of a third party and the physician's duty when performing an independent medical examination is of a limited nature, such records produced during the same do not qualify as being produced in "the process of caring for the patient's health." However, the MRAA contains a specific definition of medical records that the trial court and the majority unnecessarily limited.

To qualify as a medical record within the scope of the MRAA, a record must have only two qualities: (1) it must be "information oral or recorded in any form or medium that pertains to a patient's health care, medical history, diagnosis, prognosis, or medical condition," and (2) it must be "maintained by a health care provider or health facility in the process of caring for the patient's health." MCL 333.26263(i). That the requested records

meet the first criterion is not seriously disputed. The doctor conducting the MRI and arthrogram, Dr. Steven Seidman, testified at his deposition that plaintiff's medical procedures were performed to diagnose whether or not plaintiff had a problem with her shoulder and that his role in the context of his examination of plaintiff was the same as an independent medical examiner as it would have been outside of that context in that he was using the procedures to "[d]iagnose something wrong" with plaintiff.

I would further find that the requested records met the second criterion. Again, there is no dispute that the records were maintained by a health care provider. Where the majority and I part ways is our interpretation of the phrase "in the process of caring for the patient's health." "[C]aring for the patient's health" is the verb form of "health care," which the MRAA defines as "any care, service, or procedure provided by a health care provider or health facility to *diagnose*, treat, or maintain a patient's physical condition, *or* that affects the structure or a function of the human body." MCL 333.26263(d) (emphasis added). As Dr. Seidman indicated, he was performing the tests in order to diagnose plaintiff; he was performing tests in the process of caring for her health. I would thus find that the second criterion has been met.

Further, all health facilities and agencies that provide services to patients and are licensed under the Michigan Public Health Code are required to adopt and treat all patients in accordance with a policy that includes the following: "An individual who is or has been a patient or resident is entitled to inspect, or receive for a reasonable fee, a copy of his or her medical record upon request in accordance with the medical records access act . . . ." MCL 333.20201(2)(b). Dr. Seidman testified

that he is a licensed radiologist and a partner at defendant, who he is "pretty sure," is licensed by the state as a health care facility. He testified that the defendant's business is to provide healthcare to people and to, additionally, help physicians diagnose and treat their patients. Because a "patient" is defined under the MRAA as an "an individual who receives or has received health care from a health care provider or health facility," MCL 333.26263(n), and "health care" is broadly defined under the MRAA as "*any* care, service, or procedure provided by a health care provider or health facility to *diagnose*, treat, or maintain a patient's physical condition, or that affects the structure or a function of the human body," MCL 333.26263(d)(emphasis added), I would find that the records sought by plaintiff were, indeed, medical records within the meaning of the MRAA and that plaintiff was entitled to access said records consistent with both the MRAA and the Public Health Code. I would therefore reverse the trial court's grant of summary disposition in defendant's favor and remand for the entry of summary disposition in favor of plaintiff on this issue.