# STATE OF MICHIGAN

# COURT OF APPEALS

TIMOTHY A. CARL,

       Plaintiff-Appellant,

v

MUSKEGON COUNTY, MARK BURNS, TODD
GILCHRIST, THERESA JONES-BURTON,
BRIAN BONSTELL, LEONARD BETHKE and
BRENDAN BOWEN, Personal Representatives of
the Estate of CHRISTY BOWEN, DARRYL
HAIRSTON, JASON CERKA, RICHARD TOPP,
SCOTT SMITH, DEAN ROSELER as Muskegon
County Sheriff and Individually, and STEVEN J.
WEINERT,

       Defendants,

and

KATHERINE A. JAWOR, D.O.,

       Defendant-Appellee.

UNPUBLISHED
February 26, 2015

No. 319017
Muskegon Circuit Court
LC No. 12-048776-CZ

Before: BECKERING, P.J., and BORRELLO and GLEICHER, JJ.

PER CURIAM.

Plaintiff appeals as of right an October 28, 2013, trial court order wherein the trial court dismissed plaintiff's complaint against defendant, Katherine A. Jawor, D.O., in its entirety after granting Jawor summary disposition. Plaintiff appeals the court's ruling only as to Count II of his complaint wherein he alleged that Jawor's medical evaluation at the Muskegon County Jail (MCJ) amounted to abuse or neglect in violation of MCL 330.1722, a subsection of the Mental Health Code. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

In 2008, plaintiff worked as an in-home healthcare aid. On February 23, 2008, plaintiff was arrested for non-aggravated assault after he urinated on the head of an elderly patient and tried to pour liquid soap on the head of the woman's husband. Plaintiff was eventually charged

-1-

with two felony counts of vulnerable adult abuse, MCL 750.145n(1). Relative to this case, plaintiff was lodged in the MCJ as a pretrial detainee from February 27, 2008 to April 18, 2008.

It is undisputed that, during his stay at the MCJ, plaintiff had contact with several professionals from the Muskegon County Community Mental Health Department (CMH), including Jawor. CMH contracted with the MCJ to provide mental health services for inmates at the jail. Jawor, a psychiatrist, contracted with the CMH to provide services to CMH patients.

Plaintiff was evaluated on several occasions at the jail by CMH professionals including Jule McLaughlin, a physician's assistant (P.A.), Joseph Lihan, a limited license psychologist and emergency services therapist, and Steve Weinert, an emergency services therapist. McLaughlin proscribed plaintiff Seroquel and several days later on March 3, 2008, she wrote in a note that plaintiff needed to be "treated in a psychiatric facility." Weinert wrote a similar note.

On March 5, 2008, Jawor evaluated plaintiff at the MCJ. Jawor testified that her CMH supervisor requested that she go to the MCJ to evaluate plaintiff to determine whether he required involuntary hospitalization. At a deposition, Jawor testified that, other than Weinert's note, she did not review any of plaintiff's records before or after she evaluated him for involuntary admission and she was not aware that plaintiff had a medical chart at the jail. Jawor explained that she wanted to base her evaluation on her own perceptions and not on information from others. In addition, Jawor explained that she was not performing a psychiatric evaluation and instead was determining whether plaintiff should be admitted to the hospital. Jawor explained that she did not need to review any medical history to determine whether plaintiff should be involuntarily admitted to the hospital. She also denied that she had a doctor-patient relationship with plaintiff. Jawor was aware that plaintiff was prescribed Seroquel, but she did not know whether plaintiff was complying with his medications. She stated that plaintiff "implied" that he was taking his medications. Jawor testified that she did not know whether anyone would follow up with plaintiff regarding mental health care; she stated that plaintiff was not her patient.

Jawor ultimately determined that plaintiff did not meet the criteria for involuntary admission. Jawor's physician progress note indicated that she evaluated plaintiff from 4:18 p.m. to 4:22 p.m. on March 5, 2008. Jawor testified that this was a typo and she stated that she met with plaintiff for approximately 40 minutes.

Two days after Jawor's evaluation, plaintiff was again evaluated by a physician who determined that he did not meet the criteria for involuntary admission. Thereafter, plaintiff continued to be lodged at the MCJ from March 7, 2008 to April 18, 2008. On April 11, 2008, plaintiff was deemed incompetent to stand trial in his criminal case and the court ordered that he be committed to the State Department of Mental Health and placed in a facility recommended by the Center for Forensic Psychiatry. Plaintiff was transferred to the state psychiatric hospital on April 18, 2008, where he remained until June 19, 2008, when he was transferred back to the MCJ on June 19, 2008.

On December 21, 2012, plaintiff commenced this state court action[1] against Muskegon County, Jawor and 11 other county employees, alleging violations of the Michigan Persons with Disabilities Civil Rights Act, MCL 37.1101, *et seq.*, (Count 1), and the Michigan Mental Health Code, MCL 330.1722, (Count 2), negligence (Count 3), and intentional infliction of emotional distress (Count 4).

Ultimately, all defendants including Jawor moved for summary disposition. After extensive briefing and oral argument, the trial court took the matter under advisement. During the interim, plaintiff reached a settlement agreement with all defendants except Jawor and his claims against those defendants were dismissed and are not at issue in this appeal. The trial court ultimately granted Jawor's motion for summary disposition as to all of plaintiff's claims. Plaintiff appeals that order with respect to Count 2 under the Mental Health Code.

In Count 2 of his complaint, plaintiff alleged that Jawor violated MCL 330.1722, which provides in relevant part as follows:

> (1) A recipient of mental health services shall not be subjected to abuse or neglect.
>
> * * *
>
> (3) A recipient of mental health services who is abused or neglected has a right to pursue injunctive and other appropriate civil relief.

Under the Mental Health Code, "abuse" and "neglect" are defined as follows:

> "Abuse" means nonaccidental physical or emotional harm to a recipient, or sexual contact with or sexual penetration of a recipient . . . [MCL 330.1100a(2).]
>
> * * *
>
> "Neglect" means an act or failure to act committed by an employee or volunteer of the department, a community mental health services program, or a licensed hospital; a service provider under contract with the department, a community mental health services program, or a licensed hospital; or an employee or volunteer of a service provider under contract with the department, a community mental health services program, or a licensed hospital, *that denies a recipient the standard of care or treatment to which he or she is entitled under this act.* [MCL 330.1100b(19) (emphasis added).]

---

[1] Plaintiff previously filed suit in federal district court, but the court declined to exercise supplemental jurisdiction over plaintiff's state law claims against Jawor. The federal court proceedings are not at issue and have no bearing on the resolution of this appeal.

In his complaint, plaintiff claimed that Jawor failed to "follow through on a CMH treatment plan dated March 3, 2008 . . . recommending that [plaintiff] be transferred to the Kalamazoo Psychiatric Hospital to undergo treatment even though defendants knew [plaintiff] obviously needed such care. . . ." Plaintiff also alleged that Jawor failed to "follow through on the recommendation dated March 3, 2008 signed by Steve Weinert that [plaintiff] receive intensive psychiatric treatment. . . ." Plaintiff further alleged that Jawor "concluded after spending no more than four minutes with [plaintiff] . . . that [he] could not be certified for admission to a hospital at that time despite his obvious psychosis and despite the contrary findings and recommendations of Dr. Khan, Ms. McLaughlin, and Steve Weinert two days prior." Plaintiff summarized that "defendants abandoned [plaintiff] knowing that he was severely ill and needed help."

In her motion for summary disposition, Jawor argued that the gravamen of Count 2's "neglect" claim sounded in medical malpractice because plaintiff essentially argued that Jawor's professional medical evaluation fell below the applicable standard of care and therefore amounted to neglect. Jawor argued that the trial court was required to follow *Bryant v Oakpointe Villa Nursing Ctr*, 471 Mich 411; 684 NW2d 864 (2004), to determine whether plaintiff's claim sounded in medical malpractice. Jawor argued that under *Bryant*, plaintiff's claim "pertains to an action that occurred within the course of a professional relationship" and the claim "raises questions of medical judgment beyond the realm of common knowledge and experience." Therefore, the claim sounded in malpractice and plaintiff was required and failed to comply with the procedural requirements that govern a medical malpractice claim, particularly, submitting an affidavit of merit (AOM) and notice of intent (NOI). Additionally, the statute of limitations governing malpractice claims had expired. Jawor separately argued that, to the extent plaintiff alleged that her evaluation amounted to "abuse" under the Mental Health Code, there was no evidence to support that she abused plaintiff. Jawor argued that summary disposition was warranted under MCR 2.116(C)(7) (8) and (10).

Plaintiff responded, arguing that *Bryant* applied only to distinguish medical malpractice claims from ordinary negligence. In contrast, in this case, plaintiff had a distinct statutory cause of action under the Mental Health Code that contemplated consideration of the applicable standard of care. Thus, the claim was distinct from a medical malpractice claim and was not governed by *Bryant*.

In support of his complaint, plaintiff proffered the expert testimony of Mark Hinshaw, M.D., a clinical and forensic psychiatrist, and a report by R. Scott Stehouwer, Ph.D., a clinical psychologist. Hinshaw testified at a deposition that Jawor's evaluation amounted to "abandonment," that Jawor failed to meet her "ethical" and clinical care requirements, and that her evaluation fell "far below a standard of care." In his report, Stehouwer stated as follows:

> I am hard pressed, indeed, I have been unable to find any excuse for the failure on the part of particularly Dr. Jawor and Mr. Weinert in following through on Mr. Carl's emotional needs. Their lack of appropriate decision making in this case is shocking and disheartening. It will be vital for [CMH] and especially for Mr. Weinert and Dr. Jawor to be given a clear message regarding the barbaric treatment Mr. Carl received and the torture Mr. Carl was put through by their failure to act appropriately as mental health professionals.

-4-

The trial court ultimately granted Jawor's motion for summary disposition, explaining:

> The factual allegations of the complaint are that the Defendant failed to diagnose Plaintiff's mental illness. Clearly, the relationship between the Plaintiff and Dr. Jawor at the time she examined him was of a professional nature. Whether or not there was a misdiagnosis is a question that cannot be resolved by a jury on the basis of common knowledge and experiences. The Supreme Court has held that whether a person is properly diagnosed and treated involves issues of medical judgment. *Dorris v Detroit Osteo Hosp Corp*, 460 Mich 26; 594 NW2d 455 (1999). Resolution of this question would require expert medical testimony to establish the medical standard of care. This is tantamount to a claim of malpractice. [] [*Bryant*, 471 Mich at 411.] []

> Plaintiff contends that the claims under the Mental Health Code . . . cannot be considered malpractice claims because they are based on a violation of the statutes. However, the claims of statutory violations are dependent upon proof that Dr. Jawor failed to properly diagnose and/or treat the Plaintiff. As noted, supra, this will require expert medical testimony to establish a medical standard of care.

> The complaint's four counts sound in medical malpractice. The Plaintiff has not complied with the procedural requirements for filing a malpractice action. . . .

Plaintiff appeals the trial court's order as to Count 2 of his complaint.

## II. ANALYSIS

Plaintiff raises three issues on appeal, the essence of which can be boiled down to a single argument that the trial court erred as a matter of law in granting Jawor's motion for summary disposition.

"This Court reviews the grant or denial of summary disposition de novo to determine if the moving party is entitled to judgment as a matter of law." *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). The trial court did not articulate under what court rule it granted summary disposition. Jawor moved for summary disposition pursuant to MCR 2.116(C)(7) (8) and (10). Under MCR 2.116(C)(7), summary disposition is proper where a claim is barred as a matter of law for reasons such as immunity and the statute of limitations. "A motion under MCR 2.116(C)(8) may be granted only where the claims alleged are so clearly unenforceable as a matter of law that no factual development could possibly justify recovery." *Maiden*, 461 Mich at 119 (quotation marks and citations omitted). Finally, summary disposition is proper under MCR 2.116(C)(10) "[w]here the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law." *Id*. at 120.

Resolution of this appeal requires that we construe the relevant portions of the Mental Health Code. Issues involving statutory interpretation involve questions of law that we review de novo. *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 271; 826 NW2d 519 (2012). Statutory construction requires that we determine the intent of the Legislature by first

looking to the plain language of the statute. *Tienda v Integon Nat'l Ins Co*, 300 Mich App 605, 612; 834 NW2d 908 (2013). Where the language of a statute is unambiguous it clearly expresses the Legislature's intent and is not subject to judicial construction. *Id*.

The Mental Health Code contains several provisions relevant to this case. Chapter 7 of the act provides for the "Rights of Recipients of Mental Health Services." MCL 330.1704 provides that "[a] recipient of mental health services shall not be subjected to *abuse or neglect*." MCL 330.1722(1) (emphasis added). Chapter 1 of the act sets forth definitions that must be read in conjunction with Chapter 7. See *Ferguson v Pioneer State Mut of Mich*, 273 Mich App 47, 52; 731 NW2d 94 (2006) (provisions of a statute must be read in context of the entire act so as to produce a harmonious whole). Specifically, Chapter 1 defines the terms "abuse" and "neglect" in relevant part as follows:

> "Abuse" means nonaccidental physical or emotional harm to a recipient, or sexual contact with or sexual penetration of a recipient . . . [MCL 330.1100a(2).]

> * * *

> "Neglect" means an act or failure to act . . . *that denies a recipient the standard of care or treatment to which he or she is entitled under this act*. [MCL 330.1100b(19) (emphasis added).]

Read together, the Mental Health Code provides that a recipient of mental health services shall not be subjected to non-accidental physical or emotional harm or sexual abuse and shall not be denied "the standard of care or treatment to which he or she is entitled under [the Mental Health Code]." In addition to affording these rights to recipients of mental health services, the Mental Health Code contains an enforcement mechanism in MCL 330.1722, which provides as follows:

> (1) A recipient of mental health services shall not be subjected to abuse or neglect.

> (2) The department, each community mental health services program, each licensed hospital, and each service provider under contract with the department, community mental health services program, or licensed hospital shall ensure that appropriate disciplinary action is taken against those who have engaged in abuse or neglect.

> (3) A recipient of mental health services who is abused or neglected *has a right to pursue injunctive and other appropriate civil relief*. [MCL 330.1722 (emphasis added).]

Specifically, paragraph (3) is an enforcement mechanism that provides two avenues of relief to recipients of mental health services who allege abuse or neglect in that it provides the recipient the right to: (1) pursue injunctive relief and (2) pursue "*other appropriate civil relief*" (emphasis added).

Injunctive relief is not at issue in this case; instead, the central issue is what form of civil relief plaintiff pursued in his complaint. "It is well established that [t]he gravamen of an action is determined by reading the claim as a whole . . . and looking beyond the procedural labels to determine the exact nature of the claim." *Tipton v WM Beaumont Hosp*, 266 Mich App 27, 33; 697 NW2d 552 (2005) (quotations and citations omitted). Reading the claim as a whole, plaintiff alleged in his complaint that Jawor's medical malpractice amounted to abuse or neglect under the Mental Health Code.

In this case, the trial court held that plaintiff's claim sounded in malpractice and cited *Bryant*, 471 Mich at 411, in arriving at its conclusion. In *Bryant*, our Supreme Court explained that, "in determining whether a claim sounds in ordinary negligence or medical malpractice," a court must address the following two "fundamental questions:" "(1) whether the claim pertains to an action that occurred within the course of a professional relationship; and (2) whether the claim raises questions of medical judgment beyond the realm of common knowledge and experience." *Id*. at 422.

In *Tipton*, 266 Mich App at 27, this Court applied *Bryant* to a claim brought under the Michigan Consumer Protection Act (MCPA), MCL 445.901 *et seq*. In *Tipton*, the plaintiff alleged that the defendants Beaumont Hospital (Beaumont) and Andrew Check, M.D., violated two provisions of the MCPA, MCL 445.903(s) and MCL 445.903(cc), when they failed to disclose that Check was previously involved in five birth-trauma medical malpractice suits. *Id*. at 28-30. Specifically, the plaintiff alleged that the defendants violated MCL 445.903(s) and (cc), which provide as follows:

> (1) Unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce are unlawful and are defined as follows:
>
> * * *
>
> (s) Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer.
>
> * * *
>
> (cc) Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

On appeal, this Court was tasked with determining whether the plaintiff's claims were properly brought under the MCPA. In addressing this issue, this Court reasoned that *Bryant* governed whether the plaintiff's claims sounded in medical malpractice, explaining:

> Although [*Bryant*] applied this test in the context of determining whether an ordinary negligence claim actually sounded in medical malpractice, the test succinctly sets forth the 'two defining characteristics' of a medical malpractice claim. Therefore, we hold that it likewise applies in determining whether this MCPA claim actually sounds in medical malpractice. [*Tipton*, 266 Mich App at 34.]

Applying the two-part *Bryant* test, this Court concluded that the plaintiff's claims sounded in medical malpractice because the claims encompassed the plaintiff's professional relationship with Check and would have required the plaintiff to show that Check "was unreliable or unable to provide safe medical care" which involved a question of "medical judgment requiring expert testimony." *Id.* at 36.

In this case, like in *Tipton*, *Bryant* governs whether plaintiff's claim sounded in medical malpractice. Although plaintiff brought his claim under the Mental Health Code, *Bryant* sets forth the "two defining characteristics' of a medical malpractice claim" in general. *Tipton*, 266 Mich App at 34. Accordingly, *Bryant* governs whether plaintiff's claim sounded in medical malpractice.

Plaintiff's claim "pertains to an action that occurred within the course of a professional relationship" between plaintiff and Jawor. *Bryant*, 471 Mich 422. "A professional relationship sufficient to support a claim of medical malpractice exists in those cases in which a licensed health care professional . . . [was] subject to a contractual duty that required that professional . . . to render professional health care services to the plaintiff." *Id.* at 423. Here, there is no dispute that Jawor, as a D.O., was a licensed health care professional or that plaintiff sued Jawor in her capacity as a psychiatrist. Furthermore, Jawor had a contractual duty to render professional health care service to plaintiff. *Id.* Specifically, Jawor was contractually employed by CMH to provide professional mental health services to CMH's clients. Plaintiff, as a pretrial detainee at the MCJ, was a CMH client. Thus, Jawor had a contractual duty to render professional health care service to plaintiff when she went to the jail to evaluate him to determine whether he should be admitted to a hospital.

The second inquiry under *Bryant* requires that we determine "whether the claim raises questions of medical judgment requiring expert testimony or, on the other hand, whether it alleges facts within the realm of a jury's common knowledge and experience." *Id.* In considering what constitutes "medical judgment," the *Bryant* Court noted that,

> Medical malpractice . . . has been defined as the failure of a member of the medical profession, employed to treat a case professionally, to fulfill the duty to exercise that degree of skill, care and diligence exercised by members of the same profession, practicing in the same or similar locality, in light of the present state of medical science. [*Bryant*, 471 Mich at 424 (quotations and citations omitted).]

In this case, plaintiff's claim raised questions of medical judgment that required expert testimony. At its core, Count 2 of plaintiff's complaint alleged that Jawor, in her capacity as a psychiatrist, failed to adequately perform a medical evaluation to determine whether plaintiff should be involuntarily admitted to a hospital. Plaintiff alleged that Jawor's failure to properly perform the evaluation amounted to "abuse and neglect" under the Mental Health Code. Specifically, plaintiff alleged, in part, that Jawor failed to follow through on prior recommendations of CMH professionals that he be admitted into a hospital for psychiatric treatment. Plaintiff also alleged that Jawor "concluded after spending no more than four minutes with [plaintiff] that [plaintiff] could not be certified for admission to a hospital at that time despite his obvious psychosis and despite the contrary findings and recommendations of [other CMH professionals] two days prior."

-8-

To assess whether Jawor's medical evaluation caused the damages plaintiff alleged in his complaint, specialized knowledge was required to establish whether Jawor rendered medical treatment that fell below the applicable standard of care expected of a reasonable psychiatrist. The need for specialized knowledge was evident from the testimony of plaintiff's own expert, Hinshaw. In particular, Hinshaw testified about Jawor's clinical obligations during and after her evaluation. Hinshaw testified that Jawor was a treating physician who failed to "follow through," and that Jawor established a doctor-patient relationship. He testified about the duties that accompanied the doctor-patient relationship and opined that Jawor rendered care that was "far below a standard of care." Hinshaw's testimony illustrated that Count 2 of plaintiff's claim required expert testimony.

In short, plaintiff's claim arose from a professional relationship with Jawor and the claim raised questions of medical judgment that required expert testimony. Therefore, the trial court properly held that the claim sounded in medical malpractice under *Bryant*, 471 Mich at 428-429. It is undisputed that plaintiff did not comply with the procedural requirements of a medical malpractice claim in that he did not file an NOI 182 days before he filed his complaint, MCL 600.2912b, and he did not file an AOM with his complaint as required by MCL 600.2912d. Furthermore, plaintiff's claim was subject to a two-year statute of limitations. MCL 600.5805(6). Plaintiff's medical malpractice claim accrued and the limitations period began to run on the date of the alleged malpractice. MCL 600.5838a(1). Count 2 of plaintiff's complaint was based on Jawor's medical evaluation on March 5, 2008. Therefore, the statute of limitations on plaintiff's malpractice claim expired on March 5, 2010. Plaintiff commenced a federal suit on January 27, 2011, after the limitations period had run. Accordingly, summary disposition was proper under MCR 2.116(C)(7).

Affirmed. No costs awarded. MCR 7.219(A). We do not retain jurisdiction.

/s/ Jane M. Beckering
/s/ Stephen L. Borrello
/s/ Elizabeth L. Gleicher

-9-